ACCEPTED
13-15-00022-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
8/20/2015 2:58:06 PM
CECILE FOY GSANGER
CLERK

CAUSE NO. 13-15-00022-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT
AT CORPUS CHRISTI/EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
8/20/2015 2:58:06 PM
CECILE FOY GSANGER
Clerk

*****************************

## OFELIA LARIOS

## VS.

## THE STATE OF TEXAS

*********************************************
APPEAL OF CAUSE NO. CR-2107-14-C FROM THE
139TH DISTRICT COURT OF HIDALGO COUNTY, TEXAS
*********************************************

## BRIEF FOR THE STATE

*********************************************

RICARDO RODRIGUEZ, JR.
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS

THEODORE C. HAKE, ASSISTANT
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS

STATE BAR NO. 08716800

HIDALGO COUNTY COURTHOUSE
EDINBURG, TEXAS  78539
TELEPHONE #: (956) 318-2300
TELECOPIER #: (956) 380-0407
E-Mail: ted.hake@da.co.hidalgo.tx.us

ATTORNEYS FOR APPELLEE

CAUSE NO. 13-15-00022-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT
AT CORPUS CHRISTI/EDINBURG, TEXAS

**OFELIA LARIOS**

**VS.**

**THE STATE OF TEXAS**

CERTIFICATE OF INTERESTED PARTIES

The undersigned attorney submits that the individuals listed below are parties to the instant case:

(1)     Appellant is this case is Ofelia Larios, whose address, according to bond information in this case, is 5315 East Texas Road, Edinburg, Texas 78539.

(2)     Appellate counsel for Appellant is the Honorable Rolando Garza, whose office address is Rolando Garza, Attorney at Law, 310 West University Drive, Edinburg, Texas 78539.

(3)     Appellant's trial attorney was the Honorable L. Aron Pena, whose office address is, the Law Offices of L. Aron Pena, 600 South Closner, Edinburg, Texas 78539.

(4)     Appellee in this case is the STATE OF TEXAS, represented by and through the Office of the Criminal District Attorney of Hidalgo County, Texas.

(5)     the trial prosecutor in this case was Assistant Criminal District Attorney Orlando Javier "O.J." Esquivel, who works at the Office of the Criminal District Attorney, Hidalgo County Courthouse, Edinburg, Texas 78539.

(6)     Appellate attorneys for the State are Hidalgo County Criminal District Attorney Ricardo Rodriguez, Jr. and Assistant Criminal District Attorney Theodore C. Hake, who work at the same address as Mr. Esquivel.

Respectfully submitted,

/s/ Theodore C. Hake

THEODORE C. HAKE, ASSISTANT
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ii

NOTE REGARDING FORM OF CITATION TO THE RECORD.....................viii

STATEMENT CONCERNING ORAL ARGUMENT ...........................................ix

STATEMENT OF THE CASE ....................................................................….1

STATEMENT OF FACTS.........................................................................…1

COUNTERPOINT ONE (In Response to Issue Presented No. 1)

    The evidence in this case is legally sufficient to support
Appellant's conviction for possession of marihuana, in
an amount of 50 pounds or less, but more than 5 pounds ............................10

FACTS PERTINENT TO COUNTERPOINT ONE...............................................10

SUMMARY OF ARGUMENT IN SUPPORT OF
    COUNTERPOINT ONE ..................................................................................14

ARGUMENT AND AUTHORITIES IN SUPPORT OF
    COUNTERPOINT ONE ..................................................................................15

PRAYER...............................................................................................................46

CERTIFICATE OF COMPLIANCE WITH WORD LIMITS .............................47

CERTIFICATE OF SERVICE..............................................................................47

# INDEX OF AUTHORITIES

CASES

United States Supreme Court

Anderson v. Charles,
447 U.S. 404, 100 S.Ct.
2180, 65 L.Ed.2d 222 (1980) ...............................................................26

Doyle v. Ohio,
426 U.S. 610, 96 S.Ct.
2240, 49 L.Ed.2d 91 (1976) .................................................................26

Fletcher v. Weir,
455 U.S. 603, 102 S.Ct.
1309, 71 L.Ed.2d 490 (1982) ...............................................................26

Jackson v. Virginia,
443 U.S. 307, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979) ..........................................................18, 19

Jenkins v. Anderson,
447 U.S. 231, 100 S.Ct.
2124, 65 L.Ed.2d 86 (1980) .................................................................27

Johnson v. United States,
520 U.S. 461, 117 S.Ct.
1544, 137 L.Ed.2d 718 (1997) ........................................................ 35-36

Levine v. United States,
362 U.S. 610, 80 S.Ct.
1038, 4 L.Ed.2d 989 (1960)… ..............................................................43

Miranda v. Arizona,
384 U.S. 436, 86 S.Ct.
1602, 16 L.Ed.2d 6940 (1966) ....................................................……26

Presley v. Georgia,
558 U.S. 209, 130 S.Ct.
721, 175 L.Ed.2d 675 (2010)…............................................................35

Wainwright v. Greenfield,
474 U.S. 284, 106 S.Ct.
634, 88 L.Ed.2d 623 (1986) ...................................................……26

Texas Court of Criminal Appeals

Blackmon v. State,
350 S.W.3d 588 (Tex.Crim.App. 2011)............... …………….21, 22, 25

Brooks v. State,
323 S.W.3d 893 (Tex.Crim.App. 2010)..................... …………….18-19

Byrd v. State,
336 S.W.3d 242 (Tex.Crim.App. 2011)...............................................20

Cameron v. State,
2014 Tex.Crim.App. LEXIS 1536
(Oct. 8, 2014, rehearing granted) ..................................................... 37-40

Clayton v. State,
235 S.W.3d 772 (Tex.Crim.App. 2007)...............................................20

Clewis v. State,
922 S.W.2d 126 (Tex.Crim.App. 1996),
overruled by Brooks v. State, 323 S.W.3d
893 (Tex.Crim.App. 2010).................................................................18

Cockrell v. State,
933 S.W.2d 73 (Tex.Crim.App. 1996),
cert. denied, 520 U.S. 1173, 117 S.Ct.
1442, 137 L.Ed.2d 548 1997)............................................................29

Conner v. State,
67 S.W.3d 192 (Tex.Crim.App. 2001)...............................................20

Cuellar v. State,
613 S.W.2d 494 (Tex.Crim.App. 1981)......................................................27

Dinkins v. State,
894 S.W.2d 330 (Tex.Crim.App.),
cert. denied, 516 U.S. 832, 116 S.Ct.
106, 133 L.Ed.2d 59 (1995) ......................................................18, 27, 28

Evans v. State,
202 S.W.3d 158 (Tex.Crim.App. 2006)..............................21, 22, 23, 25

Garcia v. State,
429 S.W.3d 604 (Tex.Crim.App. 2014),
cert. denied, 2014 U.S. LEXIS 7786 (U.S. 2014).................................32

Garcia v. State,
919 S.W.2d 370 (Tex.Crim.App. 1994)..................................................20

Gear v. State,
340 S.W.3d 743 (Tex.Crim.App. 2011) .................................................19

Grotti v. State,
273 S.W.3d 273 (Tex.Crim.App. 2008)..................................................20

Guevara v. State,
152 S.W.3d 45 (Tex.Crim.App. 2004) ...................................................20

Hernandez v. State,
538 S.W.2d 127 (Tex.Crim.App. 1976) .................................................23

Hooper v. State,
214 S.W.3d 9 (Tex.Crim.App. 2007)......................................................20

Houston v. State,
663 S.W.2d 455 (Tex.Crim.App.1984)...................................................19

Isaasi v. State,
330 S.W.3d 633 (Tex.Crim.App.2010)...................................................19

Kuciemba v. State,
310 S.W.3d 460 (Tex.Crim.App. 2007)................................................20

Laster v. State,
275 S.W.3d 512 (Tex.Crim.App. 2009).........................................19, 21

Lilly v. State,
365 S.W.3d 321 (Tex.Crim.App. 2012)................................................35

Malik v. State,
953 S.W.2d 234 (Tex.Crim.App. 1997)................................................20

Marin v. State,
851 S.W.2d 275 (Tex.Crim.App. 1993)................................................42

Matchett v. State,
941 S.W.2d 922 (Tex.Crim.App. 1996),
cert. denied, 521 U.S. 1107, 117 S.Ct.
2487, 138 L.Ed.2d 994 (1997) ................................................19

Mathis v. State,
67 S.W.3d 918 (Tex.Crim.App. 2002)................................................29

Peyronel v. State,
2015 Tex.Crim.App. LEXIS 708 (June 24, 2015)......................... .40-44

Poindexter v. State,
153 S.W.3d 402 (Tex.Crim.App. 2005)....................................21, 22, 25

Salinas v. State,
369 S.W.3d 176 (Tex.Crim.App. 2012)................................................27

Sanchez v. State,
707 S.W.2d 575 (Tex.Crim.App. 1986)................................................27

State v. Turro,
991 S.W.2d 849 (Tex.Crim.App. 1997)................................................19

Steadman v. State,
360 S.W.3d 499 (Tex.Crim.App. 2012)................................................35

Threadgill v. State,
146 S.W.3d 654 (Tex.Crim.App. 2004)..................................................29

Villarreal v. State,
286 S.W.3d 321 (Tex.Crim.App.),
cert. denied, 558 U.S. 992, 130 S.Ct.
5122, 175 L.Ed.2d 350 (2009) ............................................................20

Waldo v. State,
746 S.W.2d 750 (Tex.Crim.App. 1988)..................................................27

Texas Courts of Appeals

Bates v.  State,
155 S.W.3d 212 (Tex.App. – Dallas
2004, no pet.) .....................................................................................23

Burrell v.  State,
445 S.W.3d 761 (Tex.App. – Houston
[14th Dist.] 2014, pet. ref'd)................................................21, 22, 23, 25

Cameron v. State,
415 S.W.3d 404 (Tex.App – San
Antonio 2013, pet. granted).................................................................35

Garcia v. State,
2013 Tex.App. LEXIS 2328 (Tex.App – Corpus
Christi 2013) (not designated for publication),
aff'd, 429 S.W.3d 604 (Tex.Crim.App. 2014),
cert. denied, 2014 U.S. LEXIS 7786 (U.S. 2014)................................32

Harris v.  State,
866 S.W.2d 316 (Tex.App. – San
Antonio 1993, no pet.).........................................................................27

James v.  State,
264 S.W.3d 215 (Tex.App. – Houston
[1st Dist.] 2008, pet. ref'd) .................................................................23

Lewis v. State,
933 S.W.2d 172 (Tex.App – Corpus
Christi 1996, pet. ref'd) .................................................................27

Mora v. State,
797 S.W.2d 209 (Tex.App – Corpus
Christi 1990, pet. ref'd) .................................................................27

Nixon v.  State,
940 S.W.2d 687 (Tex.App. – El Paso
1996, pet. ref'd) ........................................................................27, 28

Peters v. State,
997 S.W.2d 377 (Tex.App – Beaumont
1994, no pet.) ..................................................................................27

Peyronel v. State,
446 S.W.3d 151 (Tex.App – Houston
[1st Dist.] 2014, pet. granted)........................................................41

STATUTES

TEX. PENAL CODE ANN.

Sec. 1.07 (a) (39) (Supp. 2014) ..............................................................15

Sec. 6.01 (b) (2011) ...............................................................................15

COURT RULES

TEX. R. APP. P.

Rule 33.1 ...............................................................................................44

## NOTE REGARDING FORM OF CITATION TO RECORD

In this brief, the State will utilize the shorthand abbreviation C.R. in referring to the Clerk's Record and the shorthand abbreviation R.R. in referring to the Reporter's Record. It will also list the volume number before the abbreviation R.R. and the page number or numbers after said abbreviation.

## STATEMENT CONCERNING ORAL ARGUMENT

The issues Appellant asserts in this case involve the application of settled principles of law to the specific facts involved in this case and not any unsettled legal issues having broad significance. Accordingly, the State does not believe that oral argument is either necessary or appropriate in this case.

The State would also observe that Appellant apparently agrees as her brief does not include a request for oral argument.

## STATEMENT OF THE CASE

Appellant OFELIA LARIOS was charged in cause number CR-2107-14-C with Possession of Marihuana, In an Amount of 50 Pounds or Less, But More Than 5 Pounds.  See C.R. 5; 5 R.R. 14-15.

At a jury trial in the 139th District Court, before Judge J.R. "Bobby" Flores, Appellant was found guilty.  See C.R. 9, 29; 5 R.R. 124.[1]

After ordering that a pre-sentence investigation report be prepared (see 5 R.R. 125), Judge Flores assessed Appellant LARIOS' punishment at prison confinement for five years, suspended and probated for five years, and a $3,500.00 fine, with conditions of probation to include attending and successfully completing a 15-hour drug education program, working 160 hours at a community service project, and making a $100.00 donation to the Palmer Drug Abuse Program.  See C.R. 9, 33-36; 6 R.R. 5.

## STATEMENT OF FACTS

Because Appellant challenges sufficiency of the evidence to support her conviction, the State must describe the evidence presented at trial in some detail.

---

[1] The judgment in this case, found at C.R. 32-36, mistakenly refers to Appellant entering a plea of guilty, rather than being convicted at a trial on the merits.  Because this use of form language dealing with a plea of guilty situation clearly derives from a clerical error, the State will file a motion for judgment *nunc pro tunc* in order to correct this error.  Once said motion is granted by the trial court, the State will ask that a supplemental Clerk's Record containing the corrected judgment be submitted to this Court.

1

While he was working at the Hidalgo Port of Entry, across from Reynosa, Mexico, at around 4:00 p.m. on January 9, 2014 United States Customs and Border Protection Officer Roman Garay asked Appellant LARIOS, whom he identified, routine questions, such as what the purpose of Appellant's trip to Mexico had been and what she was bringing back with her. (5 R.R. 20-24). After Appellant had responded that she was coming back to the United States after going to visit a friend, Officer Garay asked her how long she had been in Mexico and Appellant responded that she had been there for one day. (5 R.R. 24). When Officer Garay asked Appellant further questions, the way she answered made Officer Garay "think that there was something else" or "raised the suspicion of something else" and that he had then checked and "it seems that she was more than one day in Mexico". (5 R.R. 24-25).

After thus becoming suspicious, Officer Garay went around Appellant's green Ford minivan, in which Appellant was the sole occupant; opened the passenger side door, knelt down, opened the glove compartment, and saw some packages hidden behind the glove compartment. (5 R.R. 25-26). After noting that officers have the right to search a vehicle without a warrant or probable cause when someone is entering the United States, Officer Garay explained that a glove compartment normally opens at a 45 degree angle; that his training and experience had, however, told him to open the glove compartment completely so that he could have

2

access to see what was behind it; that he had done so because he had had information about certain types of vehicles which needed to be focused on and because Appellant's answers had raised suspicion; and that he had not, however, had any information specifically about Appellant. (5 R.R. 26-28).

After seeing the packages, Officer Garay closed the glove compartment; went around to the driver's side; told Appellant to turn off the vehicle and get out of the vehicle; and called a female co-worker to keep an eye on Appellant while he went and verified what he had just seen. (5 R.R. 28-29).

Officer Garay further testified that he was familiar with, and could identify, marihuana by its smell and texture; that he had not smelled marihuana when questioning Appellant or opening the glove compartment; and that the total amount of marihuana had been 41.2 kilograms. (5 R.R. 34-36).

During cross-examination, Officer Garay indicated that someone in the vehicle would probably have been able to see the marihuana if the wall behind the glove compartment was removed or the latch was opened completely; that one could not see it unless the glove compartment was opened completely; and that the marihuana had been fresh and been freshly wrapped. (5 R.R. 37-39).

Re-direct questioning produced testimony that Officer Garay had asked Appellant if anyone else had had access to her vehicle and that Appellant had said that she was the only one who drove it. (5 R.R. 41).

3

When recalled to the stand, Officer Garay pointed out that he had found additional packages of marihuana behind the center console when he used a mirror to look behind the console; that the officers who were extracting the packages from the vehicle had told him that they were not sure when he asked them if they had searched the whole vehicle; that he had then taken the initiative, grabbed the mirror, looked behind the center console, and found the other packages; and that those packages had been specifically placed in that well-hidden location. (5 R.R. 55-60).

United States Customs and Border Protection Officer Veronica Lopez Ramirez had been asked to assist Officer Garay. (5 R.R. 42-43). In particular, Officer Garay had told Officer Ramirez that he had asked Appellant how long she had been in Mexico, that he had found some discrepancies in Appellant's answers, and that he had seen some packages in the glove compartment and had then asked Officer Ramirez to stand with Appellant while he checked the matter further. (5 R.R. 43).

While the two of them were waiting, Officer Ramirez asked Appellant, whom she identified, who the vehicle belonged to and Appellant said that it was her vehicle. (5 R.R. 44). When Officer Ramirez then asked how long Appellant had owned the vehicle, Appellant said "for about a year". (5 R.R. 44). When asked where she had gone, Appellant said that she had gone to visit a friend, but did not mention a name or a city she had gone to. (5 R.R. 44).

4

After Officer Garay confirmed that the packages contained marihuana, Officer Ramirez handcuffed Appellant and walked her into the secondary area where the cells were; Officer Ramirez and another female officer patted Appellant down for weapons or narcotics; and they did not find any weapons, but did find "a little over" $4000.00 cash and "a little over" 5000 pesos on Appellant. (5 R.R. 45-46).

Officer Ramirez also pointed out that the marihuana had been in two bundles; that one bundle of eight bricks had been behind the glove box and the other bundle of three bricks had been near the center console and that the total weight of the marihuana had been 4.12 kilograms, or about ten pounds.[2] (5 R.R. 46-47).

During cross-examination, Officer Ramirez stated that the money had been counted and given back to Appellant; that Appellant had said that she ran a business and had visited a friend in Reynosa, but had not given a name; that she was familiar with the smell of marihuana; and that one could not smell the marhuana without opening the packages. (5 R.R. 50-52). She also said that Appellant had been fingerprinted; that no one ever takes fingerprints off of this type of package; that one could leave fingerprints on cellophane packages like these packages; and that looking for fingerprints would not be done because "(u)sually, it's done in Mexico".[3] (5 R.R. 52-53).

---

[2] Both sides agreed that 1 kilogram is 2.2 pounds and the court took judicial notice of that fact. See 5 R.R. 47-48, 51

[3] Although the meaning of this remark is not clear, it apparently refers to the marihuana being packaged in Mexico.

Texas Alcoholic Beverage Commission Agent Ricardo Balli, Jr., who was assigned to the Special Investigations Unit, went to the Hidalgo Bridge after being contacted by Investigator Luna with Homeland Security Investigations because Appellant owned a bar. (5 R.R. 62-65). When he arrived at the bridge, he spoke to Appellant, who was in custody, and to Officers Garay and Ramirez. (5 R.R. 65).

Agent Balli also ran the license plates on the gold 2001 Ford Windstar and confirmed that it was registered in Appellant's name, that the registration was current, and that the vehicle had crossed over from the United States to Mexico and back approximately 44 times prior to January 9, 2014. (5 R.R. 65-67, 73-74).

He likewise pointed out that Appellant had not made a written statement, but had given an oral statement, which was not recorded. (5 R.R. 68).

At this point in his testimony, Agent Balli sponsored into evidence an evidence seizure form stating that he had seized 9.08 pounds of compressed bundles of marihuana; stated that he had taken random samples of the marihuana and sent them off to the Department of Public Safety (D.P.S.) Crime Laboratory; sponsored a photograph of the marihuana into evidence; and indicated that, in his opinion, he had not needed to send the marihuana to the laboratory to determine that it was marihuana because he could identify it based on his training and experience and its smell. (5 R.R. 68-71). He also noted that the marihuana had been green, leafy, very sticky, moist, and fresh, rather than old, brown, brittle, and dead; that the

6

Hidalgo Port of Entry is in the city of Hidalgo, in Hidalgo County, Texas; and that Appellant had told him that she had bought the vehicle at an auction. (5 R.R. 71-74).

D.P.S. Trooper Hector Resendez did a traffic stop on a gold 2001 Ford Windstar van driven by Juan Sanchez Perales at about 6:21 P.M. on June 29, 2012, asked for consent to search the vehicle for any illegal contraband; and found a false floor containing approximately 16 pounds of marihuana. (5 R.R. 75-76). In particular, he found the marihuana in an area cut into the frame of the vehicle to create a space to put illegal contraband; bundles of marihuana greased with axle grease attached to bailing wire designed to retrieve the marihuana, nicknamed "dope on a rope"; and lining on the compartment designed to defeat X-rays. (5 R.R. 78-79).

Trooper Resendez also informed the jury that it was unlikely that the marihuana found behind the glove compartment on January 9, 2014 had been packaged by the same people who had placed the marihuana he had found hidden in the false floor; that the bundles he had found had been made with a different press; that the size and manner of packaging of the bundles was different; that, "(i)f the organization was going to put the load together more than likely they would use the same press, same size bundles, same - - the same manner of packaging"; that the two packages were very different; and that hiding the marihuana behind the glove box

7

was very common and would amount to leaving it "almost in plain view to someone with my experience". (5 R.R. 81).

When asked if he had looked behind the glove box on June 29, 2012, Trooper Resendez stated, "No, sir, I don't recall. (5 R.R. 82).

When he was asked, "so trooper, you did not look at the glove compartment are, either the console or the glove compartment?" during cross-examination, Trooper Resendez replied, "No, sir." (5 R.R. 83-84). He also indicated that he may have missed something and that he had not been able to find any relationship between Appellant and Juan Sanchez Perales. (5 R.R. 84-85).

During re-direct inquiry, Trooper Resendez pointed out that he would have had a view of the dashboard and glove box and would have seen the marihuana in the front console when he took up the carpet and passenger seat to open up the false plate in the floor of the vehicle. (5 R.R. 85-86).

After the State had rested, defense counsel indicated that he did not have any motions, without ever seeking an instructed verdict. (5 R.R. 88-89).

Evelyn Larios, Appellant's daughter, testified that she helps Appellant, her mother, run the bar and some apartment complexes; that the money found on Appellant was rent money she had given to Appellant for Appellant to deposit; that Appellant had forgotten to do so and had taken the money to Mexico; and that

Appellant would go to Mexico "so often" because she had a friend that she was living with in Mexico. (5 R.R. 89-90).

During cross-examination, Ms. Larios stated that Appellant would go to Mexico every week because she has a friend over there and would stay for 4-5 days; that Appellant had bought the Windstar at an auction and had had it for about "a year or two, year and a half" before this happened; that Appellant had had another business buying and selling cars; and that Appellant was an intelligent woman who would have asked questions if she were falsely accused. (5 R.R. 92-96).

Alberto Carrizalez Garcia testified that he lives in Reynosa; that Appellant was a friend of his, whom he has known for a little over a year; that Appellant would often visit with him in Reynosa; that Appellant had been with him on the day she was arrested; that he had never put any marihuana in Appellant's vehicle; and that he does not have any idea who might have done so. (5 R.R. 98-99).

Appellant's son Gustavo Larios indicated that he lived with Appellant and worked selling cars; that Appellant had owned a car lot between 1997-2010 and had made him manager of the business, which had involved buying vehicles to resell them; that he had participated in Appellant's purchase of a 2001 Ford Windstar; and that he had not wanted her to take that vehicle because he could not resell it because it was too damaged. (5 R.R. 100-02).

9

COUNTERPOINT ONE (In response to Issue Presentcd No. 1)

THE EVIDENCE IN THIS CASE IS LEGALLY SUFFICIENT TO SUP-
PORT APPELLANT'S CONVICTION FOR POSSESSION OF MARIHUANA, IN
AN AMOUNT OF 50 POUNDS OR LESS, BUT MORE THAN 5 POUNDS.

FACTS PERTINENT TO COUNTERPOINT ONE

The indictment in this case alleged, in pertinent part, that

> OFELIA LARIOS … on or about the 9th day of January, A.D. 2014,
> and before the presentment of this indictment, in Hidalgo County,
> Texas, did then and there intentionally and knowingly a usable quantity
> of marihuana in an amount of 50 pounds or less but more than five
> pounds.

See C.R. 5; 5 R.R. 14-15.

The jury charge as to Count One indicated that "our law provides that a person commits an offense if he knowingly or intentionally possesses a usable quantity of marihuana"; that the term "possession" means "the actual care, custody, control or management of the marihuana"; that possession is a voluntary act of the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control; that a person acts intentionally, or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct; and that a person acts know-

10

ingly, or with knowledge, with respect to the nature of his conduct when he is aware of the nature of his conduct. See C.R. 25; 5 R.R. 106.

The application paragraph of the charge then stated as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about JANUARY 9, 2014, the Defendant, OFELIA LARIOS, did then and there intentionally and knowingly possess a usable quantity of marihuana in an amount of 50 pounds or less but more than five pounds, then you will find the Defendant "Guilty" of the criminal offense of Possession Of (*sic*) Marihuana in an amount of 50 pounds or less but more than 5 pounds as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict, "Not Guilty".

See C.R. 26; 5 R.R. 15-16.

After the State had rested, Appellant's attorney told Judge Flores that he did not have any motions to urge, thus not seeking an instructed verdict. See 5 R.R. 88-89.

During his final argument, the trial prosecutor discussed the elements of the offense mentioned in the jury charge; noted that the only contested issue was whether Appellant had intentionally or knowingly possessed the marihuana; referred to the evidence showing that there were vast differences in the way the marihuana located behind the glove compartment and the marihuana discovered earlier was concealed; mentioned the court's instruction not to let sympathy play a role in deliberations; and observed that Appellant was the perfect type of person to cross over the marihuana. See 5 R.R. 115-21.

11

He then made the following remarks, none of which were objected-to:

And I don't know why she got so much cash. I don't know if some-body paid her to cross the marihuana and that's why she had the cash. I don't know if her daughter is telling us the truth. But I think that's something else we need to consider. Why does she have over $4,000 in currency, in U.S. money, and over $5,000 in pesos? Why? I mean, and - - and additionally, nine pounds of marijuana in her vehicle.

Mr. Pena brought up time and time again about the fingerprints. The fingerprints. The fingerprints.

When you are doing this job long enough, fingerprints on marijuana bundles like this, we could have ten different sets of fingerprints and if not one of them matches does that mean that she didn't know it was there? No. It just means that somebody else loaded it for her.

I mean, do you - - do we really expect, are we really going to expect that she removed the glove compartment, took down the console and put it in there? No. I'm not saying that she did it. But she knew it was there. She knew she was crossing it over.

Was it a surprise to here when they found it?

The officers even testified to that. That she didn't ask any questions. She just went in willingly, got the handcuffs put on and that was that.

She - - I mean, if somebody - - is that the reaction you expect from somebody who just found out that they have - - that they're trans-porting marijuana across the country, excuse me, across the U.S./ Mexico border? I don't think so.

I know I'd be scared. I know I'd be asking questions. Well, what are you doing? What did you find? She didn't ask anything. She just went because she knew.

She knew she was caught and she know that she had her rights. She didn't say anything. And that she could come here today and ask you to say that she is not guilty.

She knew that that vehicle had - - excuse me. She also knew that vehicle had been used in a prior drug arrest. She also knew that.

That helps. Hey, if they find anything, I will just say it was from before. I will just say it was before. Who cares?

This vehicle has been crossed according to Agent Balli 44 times since the time she bought it. According to her daughter and according to Mr. Carrizales, she would go visit them every weekend. So we're telling me in all the times not once did it ever get searched, did a dog ever sniff it? I mean, never? She was able to cross 40-some times without it ever being looked at it? No, that marijuana was just put there. They would have caught her a long time ago or found it a long time ago if it had had (*sic*) been left there from June of 2012.

Their story doesn't add up. She is trying to hide behind it. She is trying to hide behind the sympathy.

All we are asking you to do is to do the right thing. Follow the law and find her guilty.

Thank you.

See 5 R.R. 121-23.

Following her conviction and sentencing, Appellant LARIOS filed a motion for new trial, challenging sufficiency of the evidence to support her conviction. See C.R. 6, 9, 43-47.

At the conclusion of a hearing on said motion, held on February 5, 2015, Judge Flores indicated that he was denying said motion. See 8 R.R. 4-7.

However, Judge Flores did not sign a written order ruling on Appellant's motion for a new trial, meaning that it was overruled by operation of law.

13

## SUMMARY OF ARGUMENT IN SUPPORT OF COUNTERPOINT ONE

Sound application of the legal principles applicable to evaluation of sufficiency of the evidence and possession of contraband shows that the evidence was legally sufficient to support Appellant's conviction of the offense of Possession of Marihuana, In an Amount of 50 Pounds or Less, But More Than 5 Pounds. Appellant's arguments to the contrary improperly focus on additional evidence not involved in this case, rather than the evidence presented at trial which, properly viewed in the light most favorable to the jury's verdict, supports her conviction.

Moreover, the challenge to the comments during final argument which Appellant injects into his argument attacking sufficiency of the evidence to support her conviction also lacks merit under the facts involved.

First of all, there was no trial objection to said remarks.

Secondly, the testimony in this case indicated that Appellant was not removed from her vehicle, handcuffed, and arrested only after the marihuana was found during the search of her vehicle. It also showed that Appellant had made an oral statement, but does not mention at what point she had done so or the content of said statement.

Third, the context involved shows that the prosecution remarks which Appellant now challenges for the first time referred to the lack of surprise or any other type of spontaneous reaction on Appellant's part, whether verbal or non-verbal, when the marihuana was found in her vehicle, which had occurred prior to her arrest.

ARGUMENT AND AUTHORITIES IN SUPPORT OF COUNTERPOINT ONE

Appellant's first issue contends that the evidence is legally insufficient to support her conviction. See Brief for Appellant, pp. 5, 12.

In arguing this claim, Appellant mentions the standards governing evaluation of sufficiency of the evidence issues; says that the State must prove care, custody, control, or management over the substance and that the matter possessed was contraband; quotes the definition of "possession" found in TEX. PENAL CODE ANN. Sec. 1.07 (a)(39) (Supp. 2014); observes that TEX. PENAL CODE ANN. Sec. 6.01 (b) (2011) states that "(p)ossession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control"; and indicates that the evidence may be direct or circumstantial, but must establish "that the accused's connection with the [contraband] was more than just fortuitous". See Brief for Appellant, p. 12. He then remarks that mere presence in the same place as the controlled substance is not sufficient to justify a finding of possession; that knowledge of the contents of the vehicle, including knowledge of the contraband, may be inferred when a defendant is exercising exclusive control over the vehicle; that the courts have, however, cautioned that reliance should not be placed solely upon control of the vehicle to show knowledge when contraband is found in a hidden compartment of a vehicle; and that courts have, instead, often required a

15

showing of additional factors or "affirmative links" indicating knowledge. <u>See</u> Brief for Appellant, p. 13.

Appellant next states that a non-exclusive list of affirmative links includes whether (1) the contraband is in plain view or recovered from an enclosed space; (2) the accused either owned or had the right to possess the place where the drugs were found; (3) the accused was found with a large amount of cash; (4) the narcotic was in close proximity to the accused; (5) the contraband was conveniently accessible to the accused; (6) a strong residual odor of the narcotic was present; (7) the accused possessed other contraband when arrested; (8) other contraband or drug paraphernalia was present; (9) the physical condition of the accused indicated recent consumption of narcotics when arrested; (10) the accused's conduct indicated a consciousness of guilt; (11) the accused tried to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements when arrested; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious place under suspicious circumstances. <u>See</u> Brief for Appellant, pp. 13-14. He then points out that the legal issue with respect to the affirmative links is "whether there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance" and indicates

that it is the logical force of the affirmative links, rather than the quantity, that is important in determining whether the evidence is legally sufficient to connect the accused to the contraband. See Brief for Appellant, p. 14.

Appellant next argues that there were not sufficient affirmative links in this case and says that his Statement of Facts shows (1) that the contraband was not in plain view and was recovered from an enclosed space; (2) that she was the registered owner of the vehicle, which, however, had been bought as part of a business that bought and sold vehicles; (3) that she had been found with cash, but had at least two businesses, rental properties and a bar, which deal in cash; (4) that the narcotics were in close proximity to her, but were in hidden compartments; (5) that the narcotics were not conveniently accessible to her; (6) that there was not a strong residual odor of the narcotic present; (7) she did not possess other contraband when arrested; (8) other contraband or drug paraphernalia was not present; (9) her physical condition of the accused did not indicate recent consumption of narcotics when arrested; (10) her conduct did not indicate a consciousness of guilt; (11) she did not try to flee; (12) she did not make furtive gestures; (13) she did not have a special connection to the contraband; (14) there were not any occupants of the premises giving conflicting statements about relevant matters; (15) she did not make incriminating statements when arrested; (16) the quantity of the contraband was only nine pounds and came out of a vehicle which had been previously seized

due to having had marihuana concealed in it; and (17) she was not observed in a suspicious place under suspicious circumstances. See Brief for Appellant, p. 15.

Appellant next quotes part of the prosecutor's final argument; indicates that use of a defendant's post-arrest silence is akin to a comment on a failure to testify at trial because it attempts to raise an inference of guilt arising from invocation of a constitutional right and thus violates the Fifth Amendment prohibition against self-incrimination; cites Dinkins v. State, 894 S.W.2d 330, 356 (Tex.Crim.App.), cert. denied, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995) in support of that proposition; and states that invocation of constitutional rights may also not be re-lied upon as evidence of guilt. See Brief for Appellant, p. 15-16.

In responding to these arguments, the State will first describe the law governing analysis of challenges to sufficiency of the evidence to support a conviction.

First of all, the Court of Criminal Appeals has held that legal sufficiency is the only standard for evaluating sufficiency of the evidence. See Brooks v. State, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010).

In doing so, it pointed out that there is no meaningful distinction between the standard for review of legal sufficiency of the evidence enumerated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and the standard for review of factual sufficiency of the evidence it had adopted in Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996); overruled Clewis; and stated that the legal

sufficiency standard set out in <u>Jackson v. Virginia</u> is the only standard which reviewing courts should apply in evaluating whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.  <u>See</u> <u>Brooks</u>, 323 S.W.3d at 894-95, 902.

Secondly, analysis of legal sufficiency of the evidence requires examination of all of the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  <u>See</u>, <u>e.g.</u>, <u>Jackson v. Virginia</u>, 443 U.S. at, 318-19, 99 S.Ct. at 2788-89; <u>Gear v. State</u>, 340 S.W.3d 743, 746 (Tex.Crim.App. 2011); <u>Isassi v. State</u>, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010); <u>Laster v. State</u>, 275 S.W.3d 512, 517 (Tex.Crim.App. 2009); <u>Houston v. State</u>, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984).

Third, the fact that conflicting evidence was introduced does not render evidence insufficient and instead it must be assumed that the fact-finder resolved any conflicts in the evidence in favor of the verdict reached.  <u>See</u>, <u>e.g.</u>, <u>Matchett v. State</u>, 941 S.W.2d 922, 936 (Tex.Crim.App. 1996), <u>cert. denied</u>, 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997); <u>State v. Turro</u>, 867 S.W.2d 43, 47 (Tex.Crim.App. 1993).

Fourth, in evaluating sufficiency of the evidence, one must consider all the evidence that supports the conviction, whether properly or improperly admitted.  <u>See</u>,

e.g., <u>Clayton v. State</u>, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); <u>Conner v. State</u>, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001); <u>Garcia v. State</u>, 919 S.W.2d 370, 378 (Tex.Crim.App. 1994).

Fifth, legal sufficiency of the evidence is to be measured in terms of "the elements of the offense as defined by the hypothetically correct jury charge for the case". <u>See</u>, <u>e.g.</u>, <u>Byrd v. State</u>, 336 S.W.3d 242, 246 (Tex.Crim.App. 2011); <u>Grotti v. State</u>, 273 S.W.3d 273, 280-81 (Tex.Crim.App. 2008); <u>Malik v. State</u>, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).

Such a charge is one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict its theories of liability, and adequately describes the offense for which the defendant is being tried. <u>See</u> <u>Byrd</u>, 336 S.W.3d at 246; <u>Villarreal v. State</u>, 286 S.W.3d 321, 327 (Tex.Crim.App.), <u>cert. denied</u>, 558 U.S. 992, 130 S.Ct 512, 175 L.Ed.2d 350 (2009); <u>Malik</u>, 953 S.W.2d at 240.

Sixth, it is not necessary that the evidence directly proves the defendant's guilt and instead "(c)ircumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." <u>See</u>, <u>e.g.</u>, <u>Kuciemba v. State</u> 310 S.W.3d 460, 462 (Tex. Crim.App. 2007); <u>Hooper v. State</u>, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); <u>Guevara v. State</u>, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).

Seventh, a fact-finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact-finder to decide which inference is most reasonable. See Laster, 275 S.W.3d at 523.

Having mentioned these general guidelines for evaluation of challenges to sufficiency of the evidence, the State would next describe the law applicable to the specific possession offense involved in this case.

First of all, in order to support a conviction for unlawful possession of a controlled substance, the prosecution must prove that the accused exercised care, custody, control, or management over the substance and that the matter possessed was contraband. See, e.g., Blackmon v. State, 350 S.W.3d 588, 594 (Tex.Crim. App. 2011); Evans v. State, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); Burrell v. State, 445 S.W.3d 761, 764-65 (Tex.App. – Houston [14th Dist.] 2014, pet ref'd).

Secondly, whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. See, e.g., Blackmon, 350 S.W.3d at 594; Evans, 202 S.W.3d at 161; Poindexter, 153 S.W.3d at 405; Burrell, 445 S.W.3d at 765.

Third, this is the "affirmative links" rule, which is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs and which requires that, when the accused is not in exclusive

21

possession of the place where the substance is found, it cannot be concluded that he or she had knowledge of, and control over, the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.  See, e.g., Blackmon, 350 S.W.3d at 594; Evans, 202 S.W.3d at 161; Poindexter, 153 S.W.3d at 405; Burrell, 445 S.W.3d at 765.

Fourth, this rule thus recognizes that mere presence at the location where the drugs are found is thus, by itself, not sufficient to establish actual care, custody, or control of said drugs, but that presence of proximity, when combined with other evidence, whether direct or circumstantial,, may well be sufficient to establish that element beyond a reasonable doubt.  See Evans, 202 S.W.3d at 162.

Fifth, the Court of Criminal Appeals has explained that the "affirmative links" rule is not an independent test of legal sufficiency and is instead merely a shorthand catch-phrase for a large variety of circumstantial evidence that may establish the knowing "possession" or "control, management, or care" of some item such as contraband.  See Evans, 202 S.W.3d at 161, n. 9.

Sixth, factors which the Court of Criminal Appeals has recognized as affirmative links include (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or

narcotics when arrested; (6) whether the defendant made incriminating gestures when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was a odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a  consciousness of guilt.  See Evans, 202 S.W.3d at 162, n. 12; Burrell, 445 S.W.3d at 765.

Seventh, said Court has also pointed out that the number of factors that are present is not as important as the logical force or the degree to which the factors, direct and circumstantial, tend to affirmatively link the accused to the contraband. See, e.g., Evans, 202 S.W.3d at 162; Burrell, 445 S.W.3d at 765; Bates v. State, 155 S.W.3d 212, 217 (Tex.App. – Dallas 2004, no pet.).

Eighth, it has also noted that the absence of various affirmative links does not constitute evidence of innocence to be weighed against the links which are present. See Hernandez v. State, 538 S.W.2d 127, 131 (Tex.Crim.App. 1976); James v. State, 264 S.W.3d 215, 219 (Tex.App. – Houston [1st Dist.] 2008, pet. ref'd).

Having described the legal principles applicable to the issue Appellant asserts, the State will now proceed to apply said law to the facts of this case.  In

doing so, it will demonstrate that Appellant has accurately said law, but then erroneously applies it to the evidence presented in this case.

In particular, Appellant does not properly evaluate the evidence in the light most favorable to the verdict and instead focuses on the lack of additional evidence linking her to the marihuana and relies on defense favorable testimony.

For example, Appellant fails to recognize that the undisputed evidence is that she was the driver and sole occupant of the vehicle in which the marihuana was found, meaning that there was, by definition, no issue of mere presence or affirmative links to said marihuana.

She also ignores the testimony that she had told Officer Garay that she was the only one who drove the green Ford Windstar minivan.

Appellant also does not take into account the fact that the marihuana was located behind the glove compartment and the center console of the vehicle, areas which were in close proximity to her and accessible to her as the driver of the vehicle, particularly if she were to completely open the glove compartment.

Appellant also alludes to other aspects of the testimony but then relies on defense favorable testimony to try to minimize the significance of said testimony.

For example, she admits that she was the registered owner of the vehicle, but then states that the vehicle had been bought as part of a business that bought and sold vehicles.

24

She also admits that she had had over $4000.00 cash and a little over 5,000 pesos on her, but then says that she had had at least two businesses which dealt in cash, namely, rental properties and a bar.

Appellant further states that the quantity of the marihuana was *only* nine pounds and refers to the evidence that said marihuana had been found in a vehicle which had previously been seized because there was marihuana concealed in it.

In doing so, she ignores the evidence that the marihuana found by Officer Garay which was the subject of this prosecution was fresh, green, sticky, moist, and freshly wrapped, rather than brown and dried out, and was also packaged far differently than the marihuana which Trooper Resendez had found hidden in a false floor several years earlier.

This reliance on testimony favorable to the defense and mention of additional affirmative links which are not involved in this case, while ignoring the links which are established by the evidence, is hardly a proper application of the principles governing evaluation of legal sufficiency of the evidence, particularly the requirement that the evidence be viewed in the light most favorable to the verdict.

In fact, the courts have repeatedly condemned precisely this type of reliance on the reviewing court's own views of the evidence and the absence of additional affirmative links. See, e.g., Blackmon, 350 S.W.3d at 595-96; Evans, 202 S.W.3d at 164; Poindexter, 153 S.W.3d at 412; Burrell, 445 S.W.3d at 766-67.

Before concluding this response to Appellant's arguments in regard to her first issue, the State must address the complaint about remarks made during its final argument which she includes in her argument concerning this error claim.

In doing so, the State would first observe that the United States Supreme Court had held that the due process requirement of the federal constitution prohibits cross-examination of a defendant concerning his silence after he has been arrested and given his <u>Miranda</u> warnings[4]. <u>See</u> <u>Doyle v. Ohio</u>, 426 U.S. 610, 611-19, 96 S.Ct. 2240, 2241-45, 49 L.Ed.2d 91 (1976).

It would next note that this holding was limited in <u>Fletcher v. Weir</u>, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), in which the Court held that the federal constitution did not prohibit the prosecution from using a defendant's silence after arrest, but before <u>Miranda</u> warnings were administered. <u>Id.</u>, 455 U.S. at 605-07, 102 S.Ct. at 1311-12.

The State would also point that that the Supreme Court has also explained that the <u>Doyle</u> decision was based on the unfairness of assuring the defendant he has a right to remain silent and then using that silence to his detriment. <u>See</u> <u>Wainwright v. Greenfield</u>, 474 U.S. 284, 291, 293, 106 S.Ct. 634, 637-39, 88 L.Ed.2d 623 (1986); <u>Anderson v. Charles</u>, 447 U.S. 404, 407-08, 100 S.Ct. 2180, 2181-82, 65 L.Ed.2d 222 (1980).

---

[4] This refers to the warnings mentioned in the landmark decision in <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

It would likewise observe that the Supreme Court has further indicated that there is no federal constitutional problem with questioning a defendant about pre-arrest silence. See Jenkins v. Anderson, 447 U.S. 231, 238-39, 100 S.Ct. 2124, 229-30, 65 L.Ed.2d 86 (1980).

The State would also note that a plurality of the Court of Criminal Appeals has held that impeachment by the use of post-arrest, pre-Miranda silence violated Article 1, Section 10 of the Texas Constitution. See Sanchez v. State, 707 S.W.2d 575, 577-82 (Tex.Crim.App. 1986).

It would further point out that Texas courts mentioned the principle that it is improper to comment on a defendant's post-arrest silence in Salinas v. State, 369 S.W.3d 176, 178 (Tex.Crim.App. 2012); Dinkins, 894 S.W.2d at 356; Cuellar v. State, 613 S.W.2d 494, 495 (Tex.Crim.App. 1981); Nixon v. State, 940 S.W.2d 687, 692 (Tex.App. – El Paso 1996, pet. ref'd); Lewis v. State, 933 S.W.2d 172, 182 (Tex. App. – Corpus Christi 1996, pet. ref'd); and Mora v. State, 797 S.W.2d 209, 214 (Tex.App. – Corpus Christi 1990, pet. ref'd).

The State would likewise observe that Texas courts recognized the principle that it is proper to inquire into pre-arrest silence in Waldo v. State, 746 S.W.2d 750, 755 (Tex.Crim.App. 1988); Peters v. State, 997 S.W.2d 377, 388 (Tex.App. – Beaumont 1994, no pet.); Harris v. State, 866 S.W.2d 316, 320 (Tex.App. – San Antonio 1993, no pet.); and Mora, supra at 214.

Finally, the State would note that the case law in this area notes that a comment on the defendant's post-arrest silence is akin to a comment on his failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right. See Dinkins, supra at 356; Nixon, supra at 692.

Having mentioned the legal principles applicable to the issue which Appellant injects into his attack on sufficiency of the evidence, the State would next observe that application of said law to the facts involved shows that the challenge to the prosecutor's remarks which Appellant now urges for the first time has no merit.

After all, the undisputed evidence presented at trial showed that Appellant was not removed from her vehicle, handcuffed, and arrested until after the marihuana had been found during the search of her vehicle.

Moreover, although there was also testimony that Appellant had made an oral statement, there was no evidence which pinpointed when she had done so, at what point she had been given her Miranda warnings, or what she had said.

In addition, evaluation of the context of the challenged remarks shows that the prosecutor was referring to the lack of any reaction of surprise or other type of reaction on Appellant's part, whether verbal or non-verbal, when the marihuana was discovered in her vehicle prior to her being arrested once the officers found said contraband.

Furthermore, Appellant did not object to the jury argument which she now challenges, meaning that she had forfeited the right to complain about said argument on appeal. See, e.g., Threadgill v. State, 146 S.W.3d 654, 670 (Tex.Crim. App. 2004); Mathis v. State, 67 S.W.3d 918, 926-27 (Tex.Crim.App. 2002); Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), cert. denied, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997).[5]

---

[5] In fact, recognition of this fact may well explain why Appellant has not urged a distinct complaint challenging said argument in this appeal and has instead merely attempted to mention said topic as part of her challenge to sufficiency of the evidence to support her conviction.

COUNTERPOINT TWO (In response to Issue Presentcd No. 2)

THE TRIAL RECORD SHOWS THAT APPELLANT NEVER COM-
PLAINED ABOUT AN ALLEGED VIOLATION OF HER RIGHT TO A PUBLIC
TRIAL AND INSTEAD SHOWS THAT SHE REPEATEDLY REQUESTED
THAT HER DAUGHTER BE ALLOWED TO SIT WITH HER AND, THERE-
FORE, APPELLANT'S PRESENT ASSERTION THAT THE TRIAL COURT
HAD DENIED HER RIGHT TO A PUBLIC TRIAL IS (A) NOT PRESERVED
FOR APPELLATE RVIEW AND (B) FACTUALLY INACCURATE.

FACTS PERTINENT TO COUNTERPOINT TWO

Appellant was given an interpreter at her arraignment. See 2 R.R. 5-6.

The record of Appellant's arraignment also shows that defense counsel had
mentioned the need to have a bond set; that Judge Flores had then asked said attorney
to tell him "about her a little bit"; that counsel had replied that Appellant had no prior
record; that Judge Flores had then asked if Appellant was a United States citizen; and
that defense counsel had replied that she was not, but was "a business lady" and that
her family was "here". See 2 R.R. 11. It further indicates that Judge Flores had then
inquired what Appellant did; that counsel had answered that she ran "El Ranchito out
here on Tower"; that Judge Flores had asked what that was; that counsel had replied
that it was, "(a) little bar"; that Judge Flores had then asked who was "here" from her

30

family; that counsel had answered "(h)er daughter, sisters, and - -"; and that Judge Flores had then told counsel to just bring him the daughter. See 2 R.R. 11-12.

The record further shows that Appellant's attorney had asked the person how she was related to Appellant; that she had replied that Appellant was her mother; that counsel had then asked if Appellant had lived here most of her life; that Appellant's daughter had replied "Correct. Yes, sir."; that Judge Flores had then asked if Appellant was a resident; and that Appellant's daughter had replied "Yes, Sir. She is a U.S. citizen". See 2 R.R. 12. It likewise indicates that Judge Flores had then asked, "U.S. citizen?"; that defense counsel had also inquired "She is a U.S. citizen?"; that Appellant's daughter had replied, "No, by naturalization"; that defense counsel had then said, "Oh, naturalization. I know she was born in Guatemala"; and that Judge Flores had then stated that he was going to reinstate the original bond. See 2 R.R. 12-13.

The following discussion between prosecutor Orlando Javier (O.J.) Esquivel, defense counsel L. Aron Pena, and Judge Flores occurred at the outset of the proceedings held on November 17, 2014:

> MR.ESQUIVEL: Judge, so for the record is the Defendant requesting a translator throughout the trial?
>
> MR. PENA: No. No. she can get by. Her daughter is going to be with her if the Court allows her.
>
> THE COURT: We'll get - - we'll get an interpreter to her.
>
> See 4 R.R. 3.

31

After Mr. Esquivel had mentioned the fact that the officer involved in the

prior seizure had not recalled ever looking in the glove compartment, a motion in

limine had been discussed, and Judge Flores had stated that they were going to

pick a jury "right now", the following remarks were made:

THE COURT: She is going to need an interpreter.

MR. PENA: I don't want her to be - - her daughter can be with here, Your Honor. She can sit up here with her.

MR. ESQUIVEL: Judge, I just want to put on the record, because it's come up on appeal before, that she is waiving the Court - -[6]

MR. PENA: Yes, we're waiving a contemporaneous translator.

MR. ESQUIVEL: I just want to put on the record that she is saying yes I'm waiving that.

THE COURT: Is that your agreement, ma'am?

MR. PENA: Sorry, Judge.

MR. ESQUIVEL: There you go.

THE COURT: Okay. Bring the jury in.

MR. PENA: Your Honor, can I have her daughter sit next to her? Any problem? She feels more comfortable. She is not going to burden anybody.

THE COURT: You are not a witness?

MR. PENA: She is not a witness. She has got - -

---

[6] Mr. Esquivel was referring to the issue of an alleged denial of the right to an interpreter which was asserted in another case originating in the 139th District Court; namely, Irving Magana Garcia v. State, 429 S.W.3d 604 (Tex. Crim.App. 2014), cert. denied, 2014 U.S. LEXIS 7786 (U.S. 2014), which affirmed a decision by this Court found at 2013 Tex.App. LEXIS 2328 (Tex.App. – Corpus Christi 2013) (not designated for publication).

THE COURT:  Okay.

MR. PENA:  She may be a witness.  She may be a witness, but not for the jury selection, Judge.

THE COURT:  Yes, I don't want to - - no, step outside.

PROSPECTIVE WITNESS:  Thank you.

THE COURT:  We got an interpreter here.

(General panel enters the courtroom).

See 4 R.R. 4-5.


After the State had presented its last witness, the jury was excused, defense counsel indicated that he had "three, maybe four quick witnesses" and the following then occurred:

MR. PENA:  So we won't make an issue out of it, Judge, she's going to testify first, the daughter.

THE COURT:  Okay.

MR. PENA:  Then I'd like her excused from the Rule. We'll dismiss here as a witness and after that she can stay - - she can stay in the courtroom.
MR. ESQUIVEL:  We object, Judge.

MR. PENA:  Once she is dismissed.

THE COURT:  He objects.  Rebuttal.

MR. PENA:  I won't - - I won't call her at all.  I give up any right to call her.

MR. ESQUIVEL:  Okay.

33

MR. PENA: Okay. Thank you.

MR. ESQUIVEL: Oh, wait. You mean you are not going to call her?

MR. PENA: I'm not going to call her.

MR. ESQUIVEL: After you call her.

MR. PENA: After I call her.

See 5 R.R. 87-88.

After Appellant's daughter Evelyn Larios had testified, Mr. Pena asked, "May she remain here, your Honor? I'm not going to call her again. Ever again." and Judge Flores responded, "Okay". See 5 R.R. 97.

## SUMMARY OF ARGUMENT IN SUPPORT OF COUNTERPOINT TWO

Relevant information contained in the trial record, which has just been described in detail, does not show that Appellant ever requested that her daughter be allowed to be present during jury selection. Instead, the record merely shows that Appellant repeatedly asked that her daughter be allowed to sit with her during the court proceedings, a request which the trial court denied because it, quite soundly, believed that use of a qualified interpreter was more appropriate.

Accordingly, Appellant's appellate contention that the trial court had erred by allegedly denying a request that her daughter be present during jury selection is both not preserved for appellate review and factually inaccurate.

34

ARGUMENT AND AUTHORITIES IN SUPPORT OF COUNTERPOINT TWO

Appellant's second issue contends that the trial court erred in denying a request that her daughter be allowed to be present during jury selection.  See Brief for Appellant, pp. 5, 17.

In arguing this claim, Appellant mentions the right to a public trial under the federal and state constitutions and TEX. CODE CRIM. PROC. ANN. Art. 1, Sec. 10 (2007); notes that said right extends to the jury selection phase of trial; cites Presley v. Georgia, 558 U.S. 209, 212-13, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010) and Steadman v. State, 360 S.W.3d 499, 510-11 (Tex.Crim.App. 2012) as support for that proposition; indicates that, in determining whether any portion of a trial was closed to the public, one must look at "the totality of the evidence and deter- mine whether the trial court fulfilled its obligation 'to take every reasonable meas- ure to accommodate public attendance' . . . .";  and cites Lilly v. State, 365 S.W.3d 321, 331 (Tex.Crim.App. 2012) and Cameron v. State, 415 S.W.3d 404, 409-10 (Tex.App. – San Antonio 2013, pet. granted) as support for said remark.  See Brief for Appellant, p. 17.  She then quotes part of the discussion between her attorney and Judge Flores just prior to jury selection; states that the Supreme Court has held that a violation of the right to a public trial is structural error that does not require a showing of harm; cites Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct.

1544, 137 L.Ed.2d 718 (1997) as support for this remark; notes that the law also recognizes that the right to a public trial was created for the benefit of the accused and is thus a personal one; says that the trial court in this case did not allow her to exercise her personal right to have her daughter present at a public proceeding; and claims that a new trial is thus needed.  See Brief for Appellant, pp. 17-18.

Appellant's arguments concerning this topic fail for the basic reason that they rely on false factual premises that she ever made a request that her daughter be allowed to be present during jury selection, that the trial court excluded her daughter from the courtroom during jury selection, and that she ever complained about her daughter allegedly not being allowed to be present during jury selection.

After all, as the State has just demonstrated in describing the relevant facts, what actually occurred was that Appellant repeatedly asked that her daughter be allowed to sit with her during the court proceedings and that the trial court, without any defense objection, denied that request because it, quite soundly, believed that use of a qualified interpreter was more appropriate.

The record further shows that Judge Flores expressed a concern about the daughter being a witness who would hear the testimony of the other witnesses if she were allowed to sit next to Appellant; that counsel had said that she might be a witness, but not for the jury selection;[7] and that Judge Flores had then told the

---

[7] The State is at a loss to understand this remark as no one is ever a witness during the jury selection process.

36

woman to step outside, without counsel objecting to said request in any manner, much less urging a specific complaint about denial of the right to a public trial.

Having shown that Appellant's contention is based on factual premises which are not supported by what the record shows had actually transpired, the State would next point out that the Court of Criminal Appeals has recently addressed the topic of exclusion of individuals during jury selection.

First of all, in Cameron v. State, 2014 Tex.Crim.App. LEXIS 1536 (Oct. 8, 2014, rehearing granted), said Court addressed a situation in which the bailiff had removed all spectators from the courtroom before voir dire began and then, after the venire panel had been seated and the case had been called, defense counsel remarked that he had noticed that the bailiff had done so, asked that family and friends of his client be allowed to be present in the courtroom during the voir dire; and indicated that, if they were excluded, he would put on the record an objection since his client had a right to a public trial. Id. at *2-3. During the lengthy debate which followed, the trial court repeatedly stated that there was no room in the courtroom; counsel asked if the court was overruling his objection; the trial judge repeatedly stated that he was not ruling and was just asking counsel where to put the spectators; there was a discussion about putting chairs in the small hallway outside of the courtroom; and the prosecutor noted that that would be a fire code violation. Id. at *3-5.

As the discussion continued, the trial judge said that he recognized the right to have people present, but simply did not know where to put them; that he was not making a ruling denying the defense's request; and that he would put members of Appellant's family in the courtroom if counsel told him where to put them. Id. at *5. The court then went off the record and apparently continued the discussion, but there was no indication that any spectators were allowed into the courtroom. Id. at *5-6.

The trial court later made a long statement about the configuration of the courtroom and the fact that it was full of potential jurors. Id. at *6-8.

The Fourth Court of Appeals had held that this situation violated Appellant's right to a public trial and reversed her conviction. See Cameron, 415 S.W.3d at 412.

On original submission on discretionary review, a five-judge majority of the Court of Criminal Appeals affirmed the Court of Appeals.[8]

In doing so, the Court of Criminal Appeals' majority first indicated that the right to a public trial extended to voir dire proceedings; that violation of this right is a structural error and does not require any showing of harm; that said right may give way to other competing rights or interests, such as a defendant's right to a fair trial; and that those circumstances should, however, be rare, occurring only if (1)

---

[8] Presiding Judge Keller authored a dissenting opinion in which Judge Hervey joined, while Judge Keasler concurred without an opinion, and Judge Meyers dissented without an opinion.

there is an overriding interest (2) based on findings (3) that closure is essential to preserve higher values, and (4) the closure is narrowly tailored to protect that value. Id. at *8-9. Said majority then stated that the trial court must also issue findings specific enough for a reviewing court to determine if the closure was properly ordered; that the party seeking to justify the closure has the burden of proof of a specific overriding interest; that it must be likely that this interest would be prejudiced in the current case; that the closure must be no broader than necessary; and that the trial court has the burden to consider all reasonable alternatives and make findings specific enough to support a closure. Id. at *9.

In next rejecting the State's argument that Cameron had not preserved her complaint for appeal, the Court's majority pointed out that the record very clearly showed that trial counsel had brought the issue of the closed courtroom to the trial court's attention; that the court had refused to rule on that issue; that all spectators had been removed from the courtroom; and that the trial judge had sought to justify that fact. Id. at *9-12. It then analyzed the issue of whether said closure was constitutionally justified and concluded that none of the reasons mentioned by the trial court did so. Id. at *12-15.

A two-judge dissent on original submission in Cameron indicated that the question of whether Cameron's friends and family had been allowed back into the courtroom was disputed; argued that Cameron had failed to meet her burden to

show that the voir dire was not open to the public; and noted that defense counsel had never responded to the trial court's suggestion that the doors be opened and the specators be allowed to stand and watch voir dire. Id. at *16-18.

On January 28, 2015, the Court of Criminal Appeals granted the State's motion for rehearing in Cameron and a decision on rehearing is currently pending.

However, the Court of Criminal Appeals has recently addressed the precise issue of preservation of error in regard to a contention that individuals were excluded from the courtroom during jury selection which is implicated in this case. See Peyronel v. State, 2015 Tex.Crim.App. LEXIS 708 (June 24, 2015).

In that case, an unidentified woman that the record shows was part of the defense had approached a juror and asked, "How does it feel to convict an innocent man?" during a break in the punishment phase proceedings; the trial court had excused all punishment phase witnesses from the courtroom on its own motion at a conference following said comment; the State had asked the trial court to exclude from the courtroom "female member of the defendant's family; and defense counsel had stated that he would respond "to that by saying that's too broad to exclude [Appellant's] wife and daughter to create the impression in the jury's mind that he has absolutely no support whatsoever here". Id. at *1-2. The State had defended its request by noting that it would normally never ask for exclusion, but that it believed that the limited exclusion was necessary in this situation because it was clear

40

throughout the trial that Peyronel had support, that the comment crossed the line into what the State considered intimidation of a jury; and that the woman who had made the comment was still unidentified. Id. at *2. The trial judge had agreed with the State, but had also decided to exclude everyone in the gallery. Id. at *2.

On appeal, Peyronel argued that he had preserved a complaint that his right to a public trial was violated and that the closure of the courtroom had violated that right for review and the State argued that the right to a public trial is subject to forfeiture and that Peyronel's complaint was not properly preserved. Id. at *3.

The Court of Appeals agreed that Peyronel had preserved his claim, reversed the trial court judgment as to punishment, and remanded the case for a new punishment hearing. See Peyronel v. State, 446 S.W.3d 151, 159, 162 (Tex.App. – Houston [1st Dist.] 2014, pet. granted).

The Court of Criminal Appeals then granted a petition for discretionary review asserting that the court of appeals had erred in finding that the public-trial issue was preserved for review when Peyronel did not ask the trial court to do anything and did not alert the trial court to the specific grounds that he would raise on appeal. See Peyronel, 2015 Tex.Crim.App. LEXIS 798, at *3-4.

At the outset of its discussion of this issue, the seven-judge majority of the Court pointed out that it had never directly addressed the issue of whether a person's right to a public trial is mandatory, subject to waiver, or can be forfeited

41

through inaction; that the State had argued that the appellant had failed to preserve her public-trial complaint for appeal in its recent <u>Cameron</u> decision; that it had, however, not directly addressed the issue of whether a public-trial claim is subject to the normal rules of procedural default in <u>Cameron</u>; and that its decision in said case was not final because it had granted the State's motion for rehearing, which was still pending. See <u>Peyronel</u>, 2015 Tex.Crim.App. LEXIS 798, at *4.

The majority opinion then noted that it had differentiated between rights that are mandatorily enforced, rights subject to waiver, and rights subject to forfeiture in <u>Marin v. State</u>, 851 S.W.2d 275 (Tex.Crim.App. 1993); that implementation of mandatorily-enforced rights is not optional and thus cannot be waived or forfeited by the parties; that some rights, while not capable of being forfeited, may be expressly waived by a defendant; that all but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong; and that many constitutional rights fall into this category. See <u>Peyronel</u>, 2015 Tex.Crim. App. LEXIS 798, at *5.

The Court of Criminal Appeals' majority then stated that it had to decide which <u>Marin</u> category the right to a public trial falls within; that this was an issue of first impression; and that it would thus look to other jurisdictions for guidance. Id. at *5. It then indicated that at least one federal court of appeals had concluded that the right to a public trial can be only waived; that other jurisdictions have held

that the public-trial right is subject to the invited-error doctrine under state law or can be waived by consent; that its research had revealed no jurisdictions that require the public-trial right to be implemented regardless of the parties' wishes and had instead found that the majority of jurisdictions addressing the issue have held that said right may be forfeited[9]; and that many of those courts and even the United States Supreme Court, have cited to <u>Levine v. United States</u>, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) for that proposition. <u>See</u> <u>Peyronel</u>, 2015 Tex. Crim.App. LEXIS 798, at *5-8.

The Court of Criminal Appeals' majority then stated that it agreed with the majority of courts which had addressed the issue; held that a complaint that a defendant's right to a public trial was violated is subject to forfeiture; and indicated that it next needed to decide whether Peyronel had preserved his public-trial claim. <u>Id</u>. at *6.

In addressing that issue, the Court of Criminal Appeals' majority noted that the record showed that Peyronel was worried about the perception of the jury if no one was present in the gallery to support him; observed that it was, however, hardly clear from the record that Peyronel's argument was the functional equivalent of asserting that his constitutional right to a public trial was being violated; said that it

---

[9] In a footnote following this statement, the majority mentions several federal cases and cases from other state jurisdictions; notes that Texas courts of appeals that have addressed the issue have unanimously reached the conclusion that the right to a public trial may be forfeited; and explains that it is citing said unpublished opinions only for illustrative purposes and not for precedential value. <u>See</u> <u>Peyronel</u>, 2015 Tex.Crim.App. LEXIS 798, n. 8 at *6-7.

43

agreed with Peyronel that he did not have to use magic language to preserve his public-trial complaint for review; pointed out that Peyronel did, however, have the burden to state the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; cited TEX. R. APP. P. 33.1; and stated that Peyronel was instead trying to raise an abstract claim as an afterthought on appeal. Id. at *8-9.

The Court of Criminal Appeals' majority thus sustained the State's ground for review and reversed the court of appeals' ruling that Peyronel had preserved a denial of the right to a public trial complaint for appellate review. Id. at 9.

In her dissenting opinion, Judge Johnson contended that Peyronel's object-tion had clearly notified the trial court that he objected to the exclusion of all spec-tators; that the trial court's global exclusion effectively had closed the proceeding to everyone and violated Peyronel's right to a public trial; and that the court of appeals judgment should thus be affirmed. See Peyronel, 2015 Tex.Crim.App. LEXIS 798, at *10-14.

The State would submit that the same reasoning as the Court of Criminal Appeals utilized in the recent Peyronel decision applies to the instant case.

After all, in the case presently being considered, Appellant repeatedly asked the trial court to allow her daughter to sit with her in court, but never asserted a

44

specific complaint about alleged denial of her right to a public trial or improper exclusion of her daughter from the courtroom.

In fact, the sole basis for Appellant's current contention that she was denied the right to a public trial is Judge Flores' request that her daughter "step outside" during the discussion of Appellant's request just prior to the commencement of jury selection.

However, the record clearly demonstrates that Appellant never objected in any manner, much less asserted a specific complaint that her right to a public trial was violated, when the trial court asked the daughter to "step outside".

Under these circumstances, Appellant never put the trial court on notice that she was asserting a challenge to an alleged violation of her right to a public trial.

Therefore, one must conclude that Appellant has forfeited her right to assert her current appellate complaint asserting that the trial court had denied a request that her daughter be present during jury selection.

PRAYER

WHEREFORE, PREMISES CONSIDERED, THE STATE prays that Appellant's conviction and sentence be affirmed, in all respects.

Respectfully submitted,

RICARDO RODRIGUEZ, JR.
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS

/s/ Theodore C. Hake
THEODORE C. HAKE, ASSISTANT
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS
STATE BAR NO. 08716800

HIDALGO COUNTY COURTHOUSE
EDINBURG, TEXAS  78539

TELEPHONE #: (956) 318-2300
TELECOPIER #: (956) 318-0407

E-Mail: ted.hake@da.co.hidalgo.tx.us

ATTORNEYS FOR THE STATE

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

In compliance with TEX. R. APP. P. 9.4 (3) , as amended effective December 1, 2012, I hereby certify that this brief contains a total of 11,375 words, exclusive of the cover page, Certificate of Interested Parties, Table of Contents, Index of Authorities, Note Regarding Form of Citation to the Record, and Statement Concerning Oral Argument.

/s/ Theodore C. Hake
THEODORE C. HAKE, ASSISTANT
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS

## CERTIFICATE OF SERVICE

I, THEODORE C. HAKE, hereby certify that I have served a copy of the foregoing Brief for the State to Appellant Ofelia Larios' appellate attorney Rolando Garza, via electronic service at crimapp@yahoo.com.

Dated this, the 20th day of August, 2015.

/s/ Theodore C. Hake
THEODORE C. HAKE, ASSISTANT
CRIMINAL DISTRICT ATTORNEY
HIDALGO COUNTY, TEXAS