**Opinion issued August 21, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00488-CR

————————————

## BRYAN KEITH BURRELL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Case No. 1320468

## OPINION

Appellant Bryan Keith Burrell was charged with felony possession of more than 400 grams of cocaine, with the intent to deliver. The jury found Burrell guilty and assessed his punishment at 40 years in prison. In his sole point of error on

appeal, Burrell contends that the evidence is legally insufficient to support his conviction. We affirm.

## Background

On September 17, 2011, Houston Police Department Officer A. Baker observed an illegally-parked vehicle on Barberry Street. Officer Baker testified at trial that Malcom Scott was sitting in the driver's seat and Burrell was sitting in the passenger seat. After Baker observed an apparent hand-to-hand drug transaction with a man standing outside the vehicle, he and his partner approached the vehicle and noticed the odor of marijuana.

Officer Baker placed Burrell and Scott in the back seat of his patrol car and turned on the car's audio recorder. Officer Baker asked Burrell where he lived and Burrell responded that his address was 4119 Barberry, apartment number 201. Officer Baker then searched the suspects' car but found no drugs. After the search but while still at the scene, Officer Baker listened to the audio recording of the conversation that Burrell and Scott had in the patrol car while officers searched their car.

Officer Baker testified that, during part of the recording, Burrell and Scott were "discussing narcotics activity and discussing the fact that suspect Scott had dropped off narcotics at suspect Burrell's apartment earlier in the day." The audio

recording, which was played for the jury, confirmed Officer Baker's conclusion.[1]

Officer Baker testified that, soon after being placed in the patrol car, Scott stated that they did not have anything, which referred to not having contraband on them. Scott said, "I'm glad I dropped that off to you cuz," and Burrell said, "Uh-huh," and gave a "grunt in the affirmative." Scott stated that he left the drugs with Burrell's girlfriend, Tawanna Robinson, and that she should not let anyone in the house, or they would get caught. The men also discussed "chopping it up," which refers to taking a large quantity of narcotics and breaking it into smaller units for sale.

Based on the statements in the recording, Officer Baker asked Sergeant J. Crawford to go to Burrell's apartment. Officer Baker remained at the scene and continued recording the conversation between Scott and Burrell.

Sergeant Crawford testified that when he arrived at the apartment, he spoke with Robinson and told Robinson that he believed that there were narcotics in the apartment. Robinson signed a consent-to-search form, and Sergeant Crawford asked Robinson if she knew of any narcotics in the apartment. According to Sergeant Crawford, Robinson led Sergeant Crawford to the back bedroom and told him "the only thing they brought me was back here." Once in the bedroom,

---

[1]     Portions of the audio recording, State's Exhibits 1A and 1B, were played for the jury during Officer Baker's testimony. The State repeatedly paused the audio recording to question Officer Baker about the statements that the jury heard in the previous clip.

Robinson showed him and then opened a closed green and brown bag, without him asking her to open it. He testified that he "observed the cocaine laying on top of some clothes inside the bag,"[2] and that it was approximately 500 grams of cocaine, which had a street value of $50,000.

Officer Baker testified that Burrell reacted to Sergeant Crawford's return arrival to the scene with the bag. Officer Baker testified that the recording captured Burrell saying, "look at this, look at this," and Scott said that somebody snitched on them. Officer Baker testified that Scott and Burrell made these statements while the cocaine was still inside the closed bag and no one could see the contents from outside the bag.

After Sergeant Crawford's return with the bag, Scott became agitated and did most of the talking, while Burrell remained calmer and talked less. But Officer Baker testified that the recording captured Scott saying that he "should have taken it to Ashley's house like he's been doing," and Burrell responded, "yea, you should." While Burrell and Scott were discussing who might have snitched, Burrell asked Scott whether anyone saw Scott take it in to the apartment.

According to Officer Baker, Scott and Burrell also discussed the explanation they would give the officers. Scott told Burrell that they needed to stick to the

---

[2]     Sergeant Crawford testified that he did not take the clothes from the bag and could not determine whose clothes they were.

"script" and tell the officers that it "wasn't found in our house." Burrell responded, "yea[h]."

Officer Baker further testified that Scott told Burrell that Burrell should not have given Officer Baker his home address. Scott asked Burrell whether items in the apartment would allow police to tie Burrell to the cocaine, and Burrell mentioned that the apartment contained some of Burrell's "paperwork."

After the State rested, Robinson and her son, Rantrell Jones, testified on behalf of Burrell. Robinson testified that Jones, who was seven years old at the time, opened the door for the police the night of the incident. According to Robinson, Sergeant Crawford told her that Scott had left a bag in the apartment, and she told him there was no bag, but Jones then said that Scott had come by with a bag earlier that day when she was not home. Jones also testified that Scott had come to the apartment with the bag earlier that evening, when Burrell and Robinson were not home.

According to Robinson and Jones, Jones showed Sergeant Crawford that Scott placed the bag in the back bedroom. Robinson testified that she was unaware the bag was in the apartment and gave the officers permission to search the bag because it did not belong to her. Robinson also testified that the clothes in the bag did not belong to Burrell. Robinson further testified that she, her children, and

Burrell lived in the apartment, but that only she and her five children were named on the lease.

## Sufficiency of the Evidence

In his sole point of error, Burrell contends that the evidence was legally insufficient to support his conviction. Specifically, Burrell argues that a rational juror could not have found that he exercised care, control, or management of the cocaine.

## A. Standard of Review

Evidence is insufficient to support a conviction if, considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez*, 337 S.W.3d at 479. If an appellate court concludes that the evidence is insufficient under this

standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479 (citing *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982)).

We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. We likewise defer to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence. *Gonzalez*, 337 S.W.3d at 479 (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). The reviewing court must also "consider all evidence which the jury was permitted, whether rightly or wrongly, to consider." *Thomas v. State*, 753 S.W.2d 688, 695 (Tex. Crim. App. 1988) (en banc) (emphasis omitted). If a portion of this evidence was erroneously admitted, the accused may complain on appeal of such error, and a new trial should be ordered if the error is reversible. *Id.*

## B. Applicable Law

To prove unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that the defendant exercised control, management, or care over the substance and that he knew the matter possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Regardless of whether the evidence is direct or circumstantial, it must establish that a defendant's connection to the contraband was more than fortuitous. *Id.* at 405–06. This "affirmative links rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* at 406 (internal quotation marks omitted). Thus, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981) (citing *Wiersing v. State*, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978)).

Though not an exhaustive list, the Court of Criminal Appeals has recognized the following affirmative links:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant

8

possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *see also Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). It is not the number of links that is dispositive, but rather, the logical force of all the evidence, both direct and circumstantial. *Evans*, 202 S.W.3d at 162. Therefore, each case must be examined according to its own facts on a case-by-case basis. *Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A factor that contributes to sufficiency in one situation may be of little value under a different set of facts. *Id.*

**C. Analysis**

Burrell contends that the evidence showed only that Scott left the bag containing cocaine at the apartment, and that there was no evidence that he "aided Scott or was aware of the presence of drugs in the apartment, let alone that he exercised actual care, custody and control of the contraband." Burrell argues that Scott "did almost all of the talking" on the audio recording and that there "are no

9

statements of Burrell on the recording which indicate that he knew anything of Scott bringing and leaving drugs in the apartment."

We conclude sufficient evidence connects Burrell with the cocaine. First, the undisputed evidence showed that, although he was not a named lessee, Burrell lived in and had the right to possess the apartment in which the cocaine was found. Burrell told Officer Baker that he lived there, and Robinson testified as much. *See Ellerbee v. State*, 631 S.W.2d 480, 483 (Tex. Crim. App. [Panel Op.] 1981) (evidence showed affirmative link between appellant and controlled substance where appellant lived in apartment three months despite not having signed lease and appellant's daughter was lessee); *Edwards v. State*, 813 S.W.2d 572, 576–78 (Tex. App.—Dallas 1991, pet. ref'd) (defendant and apartment manager's statements that defendant lived in apartment where drugs were found demonstrated defendant's control over apartment, even though no documents, personal effects, or keys were found and evidence showed that defendant's twin brother also lived in apartment).

Second, Burrell's recorded statements are incriminating and his conduct during the recording evidences a consciousness of guilt. Soon after they were placed in the patrol car, Scott said, "I'm glad I dropped that off to you cuz," and Burrell responded affirmatively by saying, "Uh-huh." Similarly, after Sergeant

Crawford returned to the scene with the bag, Scott stated that he should have taken the contraband to Ashley's house, and Burrell agreed, saying "yea[h], you should."

The evidence also shows that Burrell recognized the bag and reacted when Sergeant Crawford returned to the scene with the closed bag containing the cocaine. Burrell said, "look at this, look at this" when he saw the closed bag containing the cocaine, and Scott said that somebody snitched on them.

The evidence further shows that Burrell was concerned about being connected to the apartment where the cocaine was found. After Sergeant Crawford returned, Scott stated that hopefully they would not be connected to the apartment because it was not in Burrell's name, and he asked Burrell whether there was anything with Burrell's name on it to connect them to the cocaine. Burrell responded that there was "paperwork" connecting him to the apartment. The audio recording also captured Scott directing Burrell to tell the officers that the contraband was not theirs—and Burrell did not interrupt or disagree with Scott's suggestion.

As Burrell correctly notes, it was Scott who did most of the talking on the recording—Scott said that he left the contraband at the apartment, that someone snitched on them, and that they needed to stick to their story—but Burrell affirmatively agreed with some of Scott's statements, and, under the circumstances, Burrell's silence also can be construed as evidence of Burrell's

11

guilt. *See* TEX. R. EVID. 801(e)(2)(B) (statement is not hearsay if offered against a party and is statement of which he has "manifested [his] adoption or belief in its truth"); *Tucker v. State*, 771 S.W.2d 523, 535–36 (Tex. Crim. App. 1988) (finding adoptive admissions by defendant in recorded conversation where defendant did not contradict incriminating statements); *Flores v. State*, 84 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (appellant's failure to deny previous extraneous theft mentioned by another person, during a taped conversation, or denying that he knew to what other referred, was evidence of guilt of extraneous theft).

Burrell also contends that the judgment must be reversed because evidence of many of the affirmative links is absent in this case. But the "number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Gilbert*, 874 S.W.2d at 298 (citing *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd)); *see Lair v. State*, 265 S.W.3d 580, 588 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (evidence was sufficient to support conviction where nine links were not present because "possible links that do not exist . . . do not negate the links that are present"); *Gant v. State*, 116 S.W.3d 124, 132–33 (Tex. App.—Tyler 2003, pet. ref'd) (holding sufficient evidence to support jury's verdict and noting that number of links present is not as important as degree to which they tend to link defendant to

12

controlled substance where appellant argued that seven links were not present); *see also Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present.").

Considering all of the evidence in the light most favorable to the verdict, we conclude that sufficient affirmative links connect Burrell to the cocaine and that a rational trier of fact could have found beyond a reasonable doubt that Burrell exercised care, custody, or control over the cocaine knowing that it was contraband. *See Evans*, 202 S.W.3d at 166 ("amply sufficient evidence connecting appellant to the actual care, custody, control or management of the cocaine" when viewing circumstantial evidence "in combination and its sum total"); *Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding patrol car's video played at trial and officer's testimony about appellant's behavior in video were evidence of consciousness of guilt); *Stubblefield v. State*, 79 S.W.3d 171, 174 (Tex. App.—Texarkana 2002, pet. ref'd) (affirmative links sufficient to support jury's finding that appellant possessed contraband where appellant was present at time of search but there was no evidence of contraband found on appellant's person, appellant was not under the influence of a controlled substance, did not attempt to flee, and did not make incriminating statements during the search, and although appellant was not lessor,

possessor of house testified appellant had been living in house at least two or three weeks before the search); *cf. Roberson v. State*, 80 S.W.3d 730, 741–42 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (evidence insufficient to support conviction where appellant was driver of car containing two passengers, cocaine was found near where appellant's cousin had been sitting, no evidence of odor in car, appellant was not under influence of drugs and did not have contraband or money on his person or near driver's seat, appellant was cooperative and made no furtive gestures, and appellant and two passengers made no statements connecting appellant to cocaine).

We overrule Burrell's sole point of error.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.
Publish — TEX. R. APP. P. 47.2(b).

14