# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-15-00112-CR

**Matthew Jarrett Lee, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
NO. 2014CR0532, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Matthew Jarrett Lee of the misdemeanor offense of possession of marihuana in an amount of two ounces or less.[1] The trial court assessed punishment at 90 days' confinement in county jail but suspended imposition of the sentence and placed Lee on community supervision for a period of 12 months. In a single issue on appeal, Lee asserts that the evidence is insufficient to support his conviction. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that on December 8, 2013, Deputies Robert Huerta and Guillermo Cano of the Comal County Sheriff's Department initiated a traffic stop on a vehicle headed southbound on IH-35 after they observed the vehicle with an obstructed and expired temporary license plate. After approaching the stopped vehicle, the deputies observed four

---

[1] *See* Tex. Health & Safety Code § 481.121(a), (b)(1).

individuals in the vehicle—an adult male driver, an adult female in the front passenger seat, an adult male in the back passenger seat directly behind the driver, and a three- or four-month-old infant in a car seat located in the back passenger seat directly behind the female passenger. Deputy Huerta testified that he made contact with the driver and asked him to exit the vehicle. Huerta explained that as he was speaking with the driver, he noticed that the adult male passenger (later identified as Lee) was not wearing a safety belt. Huerta testified that he then made contact with Lee and asked him why he was not wearing a safety belt. According to Huerta, Lee responded by saying, "I don't want no trouble. I'm just along for the ride." Huerta characterized this as "unusual behavior." He explained, "I've made contact on traffic stops and I am not exaggerating, thousands. I have made thousands of traffic stops. It's an overly nervous gesture. I didn't ask if you were along for the ride. The only thing I asked was why aren't you wearing your safety belt. 'I don't want no trouble. I'm just along for the ride.' Well, that kind of raises the hair on the back of my neck sometimes."

Huerta recounted that Lee's "overly nervous" response caused him to shift his focus from the driver to Lee. Huerta testified that upon doing so, he noticed that Lee's "eyes were real bloodshot. He was shaking. His thighs were shaking. You could see through his pants that his thighs were shaking. His hands were shaking. Just it was real—it was kind of uncomfortable how nervous he was." Huerta added that when he opened the door to the passenger compartment where Lee was seated, Lee "wanted to get out" of the car before Huerta asked him to exit the vehicle. When asked if this was "normal" behavior, Huerta testified that it was not. He explained, "Usually if somebody's trying to get out of the car they are trying to get away from something. I just had him sit there real quick so I could decompress—figure out what's going on. Make sure he doesn't have anything in his hands, then get him out of the car." Huerta further testified that Lee "just

2

kept repeating, 'I don't want no trouble. I'm just along for the ride.'" According to Huerta, this was Lee's response to "everything I asked him." Huerta also contrasted Lee's behavior with the behavior of the driver and the female passenger, both of whom, Huerta testified, were "calm, cool, and collected" throughout the traffic stop.

Thereafter, Huerta obtained permission from the driver to search the vehicle. Huerta explained that he and Deputy Cano first searched the driver's area, then the front passenger compartment, and finally the back passenger area of the vehicle. Huerta testified that he found "a small cellophane bag of marihuana" on the floorboard of the back passenger seat directly below where the infant was seated. According to Huerta, the bag was in plain view; there were no other items or debris on the floor and he did not have to move anything to see it. Huerta added that the floorboard in the back had a "hump" separating the right and left sides of the back of the vehicle, and the marihuana was found "just right where the hump meets the floor." Huerta testified that the infant was the closest person to the marihuana but that Lee was the closest adult with the easiest access to it. According to Huerta, it would not have been easy for either the driver or the female passenger to get the marihuana from the front to the back seat while the vehicle was moving. The female passenger "would have had to throw it over [her] in hopes of not hitting the baby," while the driver "would have probably had to reach back and drop it back over there. Huerta added that he saw no movement, either before or during the traffic stop, to indicate that either one of them was placing anything in the back of the vehicle.

Deputy Cano provided similar testimony regarding his observations of Lee's "nervous" behavior, Lee's "bloodshot eyes," and the location of the marihuana found inside the vehicle. According to Cano, the marihuana, although not on the floorboard directly beneath Lee, was

3

"within arm's reach" of Lee, "maybe a foot away" from where he had been seated in the vehicle. Cano added that he was focused on the female passenger during the traffic stop, and he did not observe her make any movements toward the infant in the back seat.

A video recording of the traffic stop was also admitted into evidence. Based on this and other evidence, the jury found Lee guilty of the offense of possession of marihuana, and the trial court sentenced Lee as indicated above. This appeal followed.

## STANDARD OF REVIEW

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.[2] We must consider all the evidence in the record, whether direct or circumstantial or properly or improperly admitted.[3] We assume that the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict, and we defer to the jury's credibility determinations and the weight the jury assigned to the evidence presented.[4]

## ANALYSIS

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[3] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[4] *Jackson*, 443 U.S. at 318-19; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04.

4

the matter possessed was contraband.[5]  In his sole issue on appeal, Lee asserts that the evidence is insufficient to prove that he exercised actual control, management, or care of the marihuana found inside the vehicle.

As with any offense, the State may prove possession with either direct or circumstantial evidence.[6]  "Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous."[7]  "Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs."[8]  "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt."[9]  "This is the so-called 'affirmative links' rule which protects the innocent bystander—a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to someone else's drugs."[10]

There are many factors that may serve to sufficiently link a defendant to contraband and establish possession, including:  (1) the defendant's presence when a search is conducted;

---

[5]  *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).

[6]  *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Haggerty v. State*, 429 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (explaining that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt").

[7]  *Evans*, 202 S.W.3d at 161.

[8]  *Id*. at 162.

[9]  *Id*.

[10]  *Id*. at 161-62.

(2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.[11] Any of these factors may be sufficient, "either singly or in combination, to establish a person's possession of contraband."[12] It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial."[13]

Here, the jury heard evidence tending to show the following: (1) Lee was inside the vehicle immediately prior to the vehicle being searched; (2) the marihuana was found in plain view inside the vehicle; (3) the marihuana was found in the back of the vehicle, on the floorboard "within arm's reach" of Lee, "maybe a foot away" from where he had been sitting; (4) Lee was in closer proximity to the marihuana than the other adult occupants of the vehicle; (5) Deputy Huerta testified that it would not have been easy for the other adults to place the marihuana in the back of the vehicle

---

[11] *Id*. at 162 n.12.

[12] *Id.*

[13] *Id*. at 162.

6

while the vehicle was moving; (6) the officers did not observe the other adults make any movements either before or during the traffic stop to indicate that they were placing anything in the back in the vehicle; (7) Lee had "bloodshot eyes" during the traffic stop, which, the deputies testified, was consistent with marihuana use; (8) during the traffic stop, Lee interjected and then kept repeating, "I don't want no trouble" and "I'm just along for the ride," which Deputy Huerta characterized as "unusual" and "overly nervous" behavior; (9) Lee's hands and thighs were shaking, which Huerta characterized as an additional indicator that Lee was nervous; (10) Lee attempted to immediately exit the vehicle when Huerta opened the door, without prompting from Huerta, which Huerta testified was consistent with someone "trying to get away from something"; (11) Lee's "nervous" behavior contrasted with the behavior of the other occupants of the vehicle, both of whom, Huerta testified, acted "calm, cool, and collected" during the traffic stop.[14]

On appeal, Lee argues that each of the above links is insufficient, by itself, to establish possession and observes that a number of links, such as an odor of marihuana on Lee's person and the presence of drug paraphernalia, are not present in this case. But that is not how we are to evaluate the sufficiency of the evidence. Courts are not to view the links as a "litmus test" for

---

[14] Although nervous behavior is insufficient, by itself, to establish possession, *see Glass v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984), it can be considered with other evidence to support a finding that the defendant had a consciousness of guilt, which is a link connecting the defendant to the contraband. *See, e.g.*, *Hernandez v. State*, 867 S.W.2d 900, 905 (Tex. App.—Texarkana 1993, no pet.) (characterizing "nervousness" as a link that may support finding of possession when "considered together" with other evidence); *Bass v. State*, 830 S.W.2d 142, 146 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (acting "extremely nervous" in presence of police officer, although insufficient by itself to "imply guilt," can support finding that appellant had "knowledge and control of the contraband" when considered with other evidence); *see also Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) ("A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt.").

proving possession or to weigh the links that are present in a case against the links that are not.[15] Nor

are courts to take a "divide and conquer" approach to the evidence when evaluating whether it is

sufficient to support a finding of guilt.[16] Rather, we are to consider the "combined and cumulative

force of all the evidence," direct and circumstantial, that would support the jury's finding.[17] Viewing

the "combined and cumulative force" of the evidence summarized above in the light most favorable

to the verdict, we conclude that the evidence is sufficient to prove that Lee exercised actual control,

management, or care of the marihuana found inside the vehicle.[18]

---

[15] *See Evans*, 202 S.W.3d at 162 & n.12; *Ferguson v. State*, 313 S.W.3d 419, 426 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *see also James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present.").

Lee also argues that there are links present that would support a finding that the driver of the vehicle, rather than Lee, possessed the marihuana, including the driver's nervous behavior during the traffic stop. However, when the record supports conflicting inferences, as it does here, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *See Hooper*, 214 S.W.3d at 12.

[16] *See Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

[17] *Clayton*, 235 S.W.3d at 778; *Burrell v. State*, 445 S.W.3d 761, 764-65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

[18] *See, e.g., Evans*, 202 S.W.3d at 163 (characterizing evidence that contraband was "within arm's reach" of defendant and "less than a foot away" as "extremely strong 'presence' and 'proximity' links"); *Wiley v. State*, 388 S.W.3d 807, 814-15 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (affirmative links included contraband being found in plain view inside vehicle to which defendant had access); *Ferguson*, 313 S.W.3d at 426-28 (concluding that totality of evidence, including defendant's nervous behavior, easy access to contraband, and presence when vehicle was searched, was sufficient to prove possession); *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (characterizing "convenient access to the contraband" as "an accepted factor that may affirmatively link an accused to contraband found in a vehicle"); *Leyva v. State*, 840 S.W.2d 757, 760-61 (Tex. App.—El Paso 1992, pet. ref'd) (concluding

8

We overrule Lee's sole issue on appeal.

**CONCLUSION**

We affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   December 23, 2015

Do Not Publish

---

that appellant's "unsettled demeanor" and "increasingly nervous" behavior, combined with other factors, was "sufficient to raise a reasonable inference of appellant's knowledge and control of the contraband" found inside vehicle).