

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00154-CR
No. 02-25-00155-CR

———————————————

QUINTIN EARL POINTER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court Nos. 1844607, 1844931

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

A jury found Appellant Quintin Earl Pointer guilty of possession of one gram or more, but less than four grams, of cocaine; and it found him guilty of possession of less than one gram of methamphetamine. *See* Tex. Health & Safety Code Ann. § 481.115(b), (c). The trial court assessed his punishment at thirty years' confinement for possession of cocaine and ten years' confinement for possession of methamphetamine, with the sentences to run concurrently. In both cases, the trial court assessed court costs of $290 and a $20 reimbursement fee. In its judgments, the trial court also ordered that Pointer's driver's license be suspended for six months.

In three issues on appeal, Pointer argues that (1) the evidence is insufficient to show that he possessed the cocaine and methamphetamine, (2) the trial court erred by assessing duplicate court costs, and (3) the trial court erred by ordering the suspension of his driver's license in the judgments. Because the evidence is sufficient to establish that he possessed the cocaine and methamphetamine, we will overrule Pointer's first issue. But because the judgments improperly duplicated the court costs and reimbursement fee and improperly contained an order suspending Pointer's driver's license, we will sustain his second and third issues. We will delete the court costs and reimbursement fee assessed in the judgment in Cause No. 1844931, and we will delete the order suspending Pointer's driver's license in both judgments. Accordingly, we will affirm the trial court's judgments as modified.

## II. BACKGROUND

Christian Angeron, a police officer in the Grand Prairie Police Department, testified that he was on patrol around 4:40 a.m. on September 6, 2024. While on patrol, Angeron noticed three men in the parking lot of Jack's Pour House who were huddled around each other looking at the ground. Angeron "found that strange" and "thought it looked like they might be gambling." Angeron did not initially make contact with the men. However, when he returned to the area approximately five minutes later, the men were doing the same thing, so Angeron drove into the parking lot so he could speak to them.

According to Angeron, when he entered the parking lot, the three men "quickly walked away." Angeron observed that one of the men "seemed to conceal himself between some parked cars," one of which was a Nissan SUV.[1] Angeron followed the man and asked for his identification. This man was identified as Pointer, and Angeron relayed the information to dispatch to check for active warrants.[2] While near the parked cars, Angeron observed a clear plastic bag with what he suspected to be marijuana in the center console of the Nissan SUV. Angeron also found two white dice and a phone on the ground in the parking lot.

---

[1]Angeron stated that there were "at least four" cars in the parking lot.

[2]Video from Angeron's body camera depicting the encounter was admitted into evidence at Pointer's trial.

3

Dispatch told Angeron that Pointer had a warrant for his arrest. Accordingly, Angeron placed Pointer under arrest. After placing Pointer under arrest, Angeron searched him. During that search, Angeron discovered a key fob. Angeron testified that the key fob activated the Nissan SUV.[3] During his search of that vehicle, Angeron found the bag of marijuana in the center console. In the sunglasses holder in the vehicle's overhead console, he discovered a clear plastic bag that contained "smaller baggies" containing a "white powdery substance" and pills. While in Angeron's police vehicle, Pointer stated that he had "four or five X pills in [the Nissan SUV] and three Palisades."[4] At Pointer's trial, Angeron acknowledged that he had not seen Pointer driving or sitting in the Nissan SUV, and he could not recall the identity of the Nissan SUV's registered owner.

Karen Deiss, a senior analyst with Armstrong Forensics Laboratory, conducted forensic testing on the white powdery substance and the pills found in the Nissan SUV and testified at trial. Deiss determined that the white powdery substance was

---

[3]The video from Angeron's body camera shows that the Nissan SUV's alarm went off when Angeron opened the vehicle's door, and it then depicts him using the key fob to turn off the alarm.

[4]Angeron stated that the "X pills" referred to "ecstasy." He did not know what Pointer meant when he referred to "Palisades."

cocaine.[5]  She tested one of the pills found in the Nissan SUV and determined that it was methamphetamine.[6]

After hearing the evidence, the jury convicted Pointer of possession of one gram or more, but less than four grams, of cocaine; and it convicted him of possession of less than one gram of methamphetamine.  The trial court then assessed his sentences, and these appeals followed.

### III.  DISCUSSION

**A.  Sufficiency of the Evidence**

In his first issue, Pointer argues that the evidence is insufficient to show that he possessed the cocaine and methamphetamine.

**1.  Standard of Review**

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Gutierrez v. State*, 710 S.W.3d 804, 809 (Tex. Crim. App. 2025).  This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[5]Deiss stated that the tested samples of cocaine weighed a combined 1.56 grams.

[6]Deiss said that the pill weighed .14 grams.

inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Bittick v. State*, 707 S.W.3d 366, 369 (Tex. Crim. App. 2024); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the

6

State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021). The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Solis v. State*, No. AP-77,109, 2025 WL 3029290, at *5 (Tex. Crim. App. Oct. 30, 2025); *Carter v. State*, 620 S.W.3d 147, 149 (Tex. Crim. App. 2021).

### 2. Applicable Law

Pointer was charged with (1) intentionally or knowingly possessing a controlled substance, namely cocaine, in an amount of more than one gram but less than four grams; and (2) intentionally or knowingly possessing a controlled substance, namely methamphetamine, in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(b), (c). To convict Pointer of possession of cocaine and methamphetamine, the State had to prove that he knowingly or intentionally exercised

7

control, management, or care over the cocaine and methamphetamine.[7]  *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citing Tex. Health & Safety Code Ann. § 481.115(a)); *see also* Tex. Penal Code Ann. § 1.07(a)(39) (defining possession as "actual care, custody, control, or management").

The elements of possession may be proven through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the drugs was more than fortuitous.  *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  When contraband is not in the exclusive possession of the defendant, a factfinder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference.[8]  *Tate*, 500 S.W.3d at 413–14; *White v. State*, No. 01-23-00041-CR, 2025 WL 309726, at *10 (Tex. App.—Houston [1st Dist.] Jan 28, 2025, no pet.) (mem. op., not designated for publication).  The Texas Court of Criminal Appeals has adopted a "non-exclusive list of fourteen factors" that "may indicate a link connecting the defendant to the knowing possession of contraband."  *Tate*, 500 S.W.3d at 414.

---

[7]The only element of these offenses challenged by Pointer in his brief is whether there is sufficient evidence that he intentionally or knowingly possessed the cocaine and methamphetamine found in the Nissan SUV.

[8]In his brief, Pointer argues that the evidence is insufficient to prove that he exercised control, management, or care over the cocaine and methamphetamine, stating that "he wasn't the only one present" in the parking lot and that Angeron had said that "there were three men present."

Those factors are: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the defendant was found with a large amount of cash, and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Id.*; *Evans*, 202 S.W.3d at 162.

"An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it." *Garcia v. State*, 218 S.W.3d 756, 763 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The number of factors present is not as important as the degree to which the factors tend to affirmatively link the defendant to the contraband. *Looney v. State*, No. 06-24-00071-CR, 2025 WL 87705, at *3 (Tex. App.—Texarkana Jan. 14, 2025, no pet.) (mem. op., not designated for publication); *see Evans*, 202 S.W.3d at 162 (stating that it is "not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial"). "Similarly, the 'absence of various affirmative links does not

9

constitute evidence of innocence to be weighed against the affirmative links present.'"
*White*, 2025 WL 309726, at *10 (quoting *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)). In considering the evidence of sufficient affirmative links, each case must be examined according to its own facts on a case-by-case basis. *Looney*, 2025 WL 87705, at *3; *Burrell v. State*, 445 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

### 3. Analysis

Here, there are numerous affirmative links between Pointer and the cocaine and methamphetamine found in the Nissan SUV. Pointer was found in a parking lot near that vehicle with a key fob that operated it. Angeron observed a clear plastic bag of marijuana in the center console of the SUV, and upon his search of the vehicle, he discovered the cocaine and methamphetamine in the enclosed sunglasses holder. Moreover, according to Angeron, when he arrived on the scene, Pointer "quickly walked away" and "seemed to conceal himself between some parked cars." And when Pointer was in Angeron's police vehicle, he stated that he had other contraband—"four or five X pills . . . and three Palisades." These facts affirmatively link Pointer to the cocaine and methamphetamine found in the Nissan SUV. *See Christopher v. State*, 639 S.W.2d 932, 935–36 (Tex. Crim. App. 1982) (stating that appellant's possession of key to camper where drugs found "reasonably implie[d] his control over the contraband" and holding that appellant's possession of key, coupled with strong odor of marijuana emanating from the camper, was sufficient to establish

10

his knowledge and control of the contraband), *overruled on other grounds*, *Preston v. State*, 700 S.W.2d 227, 230 (Tex. Crim. App. 1985); *Atilano v. State*, No. 01-17-00564-CR, 2018 WL 2107239, at *1, *3 (Tex. App.—Houston [1st Dist.] May 8, 2018, no pet.) (mem. op., not designated for publication) (finding affirmative link between appellant who was observed "moving around in the cab of the truck" and methamphetamine "found in the enclosed space of the truck's cab"); *Hung Phuoc Le v. State*, 479 S.W.3d 462, 468 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that appellant's close proximity to marijuana found in location he had access to and control over sufficiently linked him to the contraband); *Whitworth v. State*, 808 S.W.2d 566, 570 (Tex. App.—Austin 1991, writ ref'd) (stating that "[p]ossession of a key to a location at which contraband is found reasonably implies control over the contraband contained within that location" and holding that appellant exercised care, custody, control, or management of marijuana found in vehicle's trunk when appellant had possession of the key to the trunk).

After viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Pointer intentionally or knowingly possessed cocaine in an amount of more than one gram but less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(c); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162.

Similarly, after viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that Pointer intentionally or knowingly possessed methamphetamine in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.115(b); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Tate*, 500 S.W.3d at 414; *Evans*, 202 S.W.3d at 162.

Even if we could have found to the contrary were we sitting as the factfinder, we cannot act as the "thirteenth juror," and we may not substitute our judgment for that of the jury. *See Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014); *Burgess v. State*, No. 02-19-00203-CR, 2021 WL 3556953, at *3 n.6 (Tex. App.—Fort Worth Aug. 12, 2021, no pet.) (mem. op., not designated for publication) ("[T]he factfinder alone—in this case, the jury—judges the evidence's credibility, and we may not act as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the factfinder.").

We overrule Pointer's first issue.

## B. Duplicate Costs

In his second issue, Pointer argues that the trial court erred by assessing duplicate court costs. The State agrees with Pointer. So do we.

"In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant." Tex. Code Crim. Proc. Ann.

art. 102.073(a). When a trial court erroneously assesses court costs for multiple convictions that were tried in a single proceeding, we normally retain the court costs for the offense of the highest category and modify the judgment in the offense of the lower category to delete the duplicate court costs. *Johnson v. State*, No. 02-23-00090-CR, 2024 WL 1318238, at *3 (Tex. App.—Fort Worth Mar. 28, 2024, pet. ref'd) (mem. op., not designated for publication); *Pickrom v. State*, No. 02-19-00188-CR, 2020 WL 1808485, at *2 (Tex. App.—Fort Worth Apr. 9, 2020, pet. ref'd) (mem. op., not designated for publication).

Here, Pointer was convicted in Cause No. 1844607 of possession of one gram or more, but less than four grams, of cocaine, a third-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(c). In Cause No. 1844931, he was convicted of possession of less than one gram of methamphetamine, a state-jail felony. *See Id.* § 481.115(b). Those cases were tried together in a single criminal action, and the trial court assessed court costs of $290 and a $20 reimbursement fee in both judgments. Pointer should not have been assessed court costs and reimbursement fees in each case. *See Johnson*, 2024 WL 1318238, at *3; *Pickrom*, 2020 WL 1808485, at *2. Accordingly, we sustain Pointer's second issue and delete the $290 award of court costs and the $20 reimbursement fee in Cause No. 1844931, the lower category of offense. *See Arambula v. State*, No. 02-24-00420-CR, 2025 WL 2423518, at *2 (Tex. App.—Fort Worth Aug. 21, 2025, no pet.) (mem. op., not designated for publication) (stating that "because the cases were tried together, costs and reimbursement fees

13

should have been assessed in only one of the cause numbers" and modifying "judgments [in duplicate cause numbers] to delete the costs and reimbursement fees assessed"); *Johnson*, 2024 WL 1318238, at *3 (deleting duplicate awards of court costs and reimbursement fees).

## C. Order Suspending Pointer's Driver's License

In his third issue, Pointer argues that the trial court should delete the order suspending his driver's license from the judgments.[9] The State agrees, and so do we.

Section 521.372(a)(2) of the Texas Transportation Code provides that a person's driver's license is automatically suspended on final conviction of a felony drug offense. Tex. Transp. Code Ann. § 521.372(a)(2). With an exception not applicable here, the period of suspension is ninety days after the date of the final conviction. *Id.* at § 521.372(c). Section 521.372 is "self-operative," and a person's "license is automatically suspended upon a final conviction." *Jones v. State*, 77 S.W.3d 819, 821 n.6 (Tex. Crim. App. 2002) (citing *Gaddy v. Tex. Dep't of Pub. Safety*, 380 S.W.2d 783, 785 (Tex. App.—Eastland 1964, no writ)).

Article 42.01 of the Texas Code of Criminal Procedure lists the items that are to be included in a criminal judgment. *See* Tex. Code Crim. Proc. Ann. art. 42.01. That article does not list Section 521.372's license suspension as something that is to

---

[9]Alternatively, Pointer requests that we correct the length of the suspension from six months to ninety days. *See* Tex. Transp. Code Ann. § 521.372(c) ("Except as provided by Section 521.374(b), the period of suspension or license denial under this section is 90 days after the date of a final conviction.").

be included in the judgment. *See id.* And for good reason: "a license suspension is not considered punishment because it is not incarceration, probation, a fine, or an enhancement." *Burg v. State*, 592 S.W.3d 444, 452 (Tex. Crim. App. 2020). Instead, it is a civil penalty that is "not the kind of civil penalty that is so punitive in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal punishment." *Id.* Thus, the trial court's inclusion in the judgments of the order suspending Pointer's driver's license was neither required nor authorized, and we sustain Pointer's third issue. *See* Tex. Code Crim. Proc. Ann. art. 42.01; Tex. Transp. Code Ann. § 521.372(a)(2); *Burg*, 592 S.W.3d at 452; *Jones*, 77 S.W.3d at 821 n.6.

When an affirmative finding has been improperly included in the trial court's judgment, an appellate court may reform the judgment by deleting the finding. *Gonzalezsarceno v. State*, No. 02-25-00042-CR, 2025 WL 2736521, at *1 (Tex. App.— Fort Worth Sept. 25, 2025, no pet.). Accordingly, we modify the judgments to delete the language contained in them ordering that Pointer's driver's license be suspended for six months. *See id.*

## IV. Conclusion

Having overruled Pointer's first issue but having sustained his second and third issues, we modify the trial court's judgments as indicated above, and we affirm the trial court's judgments as modified.

15

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 15, 2026